## Case No. 324.

AMES et al. v. COLORADO CENT. R CO.

[4 Dill. 251;[1] 9 Chi. Leg. News, 132; 3 Cent. Law J. 815.]

Circuit Court, D. Colorado. Dec. 6, 1876.

ADMISSION OF COLORADO AS A STATE AND ITS EFFECT UPON THE TERRITORIAL COURTS AND UPON CAUSES PENDING THEREIN AT THE TIME OF SUCH ADMISSION — CONSTRUCTION OF ENABLING ACT (18 Stat. 474) AND ACT JUNE 26, 1876, CREATING FEDERAL COURTS IN COLORADO.

1. The effect of the admission of the territory of Colorado as a state, and the erection of federal courts therein (Laws Cong. 1875–76, p. 61), and the extension of the laws of the United States over the same, was, ipso facto, to extinguish the territorial government and the territorial courts as courts of the general government.

[Cited in Ames v. Colorado Cent. R. Co., Case No. 325; Sargent v. Kindred, 49 Fed. 487.]

2. By special provisions in the enabling act and the constitution of the state, the territorial courts, on the admission of the state, became the provisional and temporary courts of the state.

3. The above mentioned act of June 26th, 1876, makes provision for the disposition of all cases pending in the territorial courts at the time of the admission of Colorado into the Union; cases of federal character are transferred to the proper federal court; other cases to the state courts.

4. The federal character of the cause must appear in the pleadings or of record; if it does not thus appear, the state court may lawfully proceed therein, and its action will be valid.

5. Where the federal jurisdiction depended on citizenship, and the requisite citizenship to give federal jurisdiction did not appear of record, the party who does not reveal such citizenship, but after the admission of the state proceeded actively in a cause pending in the local courts, was held to have made his election under the act of June 26th, 1876, to remain in the state court. Whether such election would preclude the party from taking a transfer of the cause under the general removal acts, quaere?

In equity. This cause came before the circuit judge on a motion by the plaintiffs for an order on the clerk of the United States circuit court for Colorado to docket the cause (the original files from the territorial court accompanying said motion, as also a certified transcript), and for a further order on the said clerk to issue a writ of assistance in said cause to the United States marshal of Colorado, to put the receiver heretofore appointed by the judge of the local court in possession of the road and property of the defendant company. This motion is resisted by the railroad company. The files and records submitted show the following facts, stated in the order of their occurrence: June 21st, 1876, the bill in this case was filed in the district court of the United States of the late territory of Colorado, for the county of Boulder, by Ames and Duff, the trustees of a mortgage made by the defendant company, dated June 1st, 1872, upon the railroad

---

[1][Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

property, tolls, income, and franchises of the company, to secure bonds to the amount of one million two hundred and twelve thousand dollars, with coupons payable semiannually, alleging default in payment of interest due December 1st, 1872, to and including June, 1876, and praying an injunction (for reasons stated), restraining the company from disposing of or encumbering its property, or increasing its capital stock, for a receiver, and a foreclosure of the mortgage. The railroad company is the only defendant. That is the general nature of the bill which was filed in the local court on the 21st of June of the current year. July 13th, 1876, the company filed a plea to the jurisdiction of the Boulder district court, which, on July 18th, was overruled. July 22d, 1876, the company filed an answer to the merits, and on July 24th a replication was filed by the plaintiffs. The motion for the appointment of a receiver was resisted and not finally determined until early in August, when the district court of Boulder county appointed a receiver. The receiver was unable to obtain possession, and on August 12th, 1876, the judge of said court ordered out a writ of assistance to put the receiver in possession. While the application for a receiver was pending, and before it was decided, namely, August 1st, 1876, the proclamation of the president was issued for the admission of Colorado as a state. The pleadings show that the defendant company is a corporation created by the late territory of Colorado, but the citizenship of the plaintiffs (Ames and Duff) is not shown by the bill of complaint, except by the following averment:

"Humbly complaining, Fred. L. Ames, of Easton, Massachusetts, and John R. Duff, of the city of Boston, and state of Massachusetts, state that they are trustees," etc.

There is no distinct averment that they are citizens of the state of Massachusetts. October 24th, 1876, an affidavit, sworn to October 23d, 1876, was filed with the clerk of the Boulder district court (the court not being in session) by one of the plaintiffs' solicitors, stating that "the said Ames and Duff, complainants in said suit, are citizens of the state of Massachusetts, and the Colorado Central Railroad Company is a corporation," etc., containing no statement as to the citizenship of the plaintiffs at the time when the suit was commenced in the territorial court, though in the disposition finally made of it that is not very material; but in other cases it is certainly desirable, if not necessary, that there should be shown citizenship at the time when the suit was commenced, and the said clerk was at the same time notified in writing by the said solicitors that, "upon the filing of the affidavit, the above entitled cause becomes transferred to the circuit court of the United States for this circuit, and transmit the files and cer-

tified copy of the record entries in said cause to the said circuit court." That is, in brief, the state of the cause in the local court.

Now, as to the legislation applicable to this cause. March 3d, 1875, the enabling act in respect to Colorado was passed. [18 Stat. 474.] March 14th, the constitution of Colorado was framed. June 26th, 1876, the act of congress "to further the administration of justice in the state of Colorado," and creating the federal courts therein, was passed. July 1st, 1876, an election was held, at which the constitution was adopted. August 1st, 1876, the proclamation of the president declaring Colorado admitted as a state, was issued. The enabling act, aforementioned, contains the following: "Sec. 1. That the inhabitants of the territory of Colorado are hereby authorized to form for themselves, out of said territory, a state government, with the name of the state of Colorado, which state, when formed, shall be admitted into the Union upon an equal footing with the original states in all respects whatever, as hereinafter provided." The fifth section provides that if a majority sanctions that constitution, the president, without any further action, may issue his proclamation, and thereupon the state becomes admitted without any action whatever on the part of congress. Then follows a provision as to senators and representatives, and the one supposed to be material, in these words: "And until said state officers are elected and qualified under the provisions of the constitution, the territorial officers shall continue to discharge the duties of their respective offices." That is the enabling act. The above mentioned act of congress of June 26th, 1876, as to the federal courts in Colorado, contains the following: "That when the state shall be admitted into the Union, according to the provisions of the act approved March 3d, 1875, the laws of the United States not legally inapplicable shall have the same force and effect within the said state as elsewhere within the United States; and said state shall constitute one judicial district, to be called the district of Colorado, and for said district a district judge, a marshal, and a district attorney of the United States shall be appointed by the president, by and with the advice and consent of the senate, with the same rights, powers, and duties provided by law for similar officers in the other states, except as herein otherwise provided; and said district of Colorado shall be attached to, and constitute a part of, the eighth judicial circuit; and a term of the circuit court and district court for said district, shall be held at Denver, in said state, on the first Tuesday in July and on the first Tuesday in December in each year." Sections 5 and 8 are material. Section 5 contains a provision in respect to the disposition of pending cases in the supreme court of the United States, on writs of error or appeal from the supreme court of the territory of Colorado, and that such cases "may be heard and determined by the supreme court of the United States, and the remand of execution or of further proceedings shall be directed by the supreme court of the United States to the circuit or district courts of the district of Colorado, or to the supreme court of the state of Colorado, as the nature of the case may require; and each of said last mentioned courts shall be the successor of the supreme court of Colorado territory, as to all such cases, with full power to proceed with the same, and to award the mesne or final process therein." Section 8, which is the section in relation to pending cases in the territorial courts: "That in respect of all cases, proceedings, and matters pending in the supreme or district courts of the territory of Colorado, at the time of the admission of said state into the Union, whereof the circuit or district courts by this act established might have had jurisdiction under the laws of the United States, had said courts existed at the time of the commencement of such cases, the said circuit and district courts, respectively, shall be the successors of the supreme and district courts of said territory, and all the files, records, and proceedings relating thereto shall be transferred to said circuit and district courts respectively, and the same shall be proceeded with therein in due course of law."

This is all there is in the acts of congress relating to this cause. In the constitution of the state of Colorado, are the following provisions: Article 8, § 7, provides for the general election to be held on the first Tuesday in October, and at that election state officers, including judges, were elected by the people. In the fifth section of the schedule is this provision: "Whenever any two of the judges of the supreme court of the state, elected or appointed under the provisions of this constitution, shall have qualified in their office, the causes theretofore pending in the supreme court of the territory, and the papers, records, and proceedings of said court, and the seal and other property pertaining thereto, shall pass into the jurisdiction and possession of the supreme court of the state, and, until so superseded, the supreme court of the territory and the judges thereof shall continue with like power and jurisdiction as if this constitution had not been adopted. Whenever the judge of the district court of any district, elected or appointed under the provisions of this constitution, shall have qualified in his office, the several causes theretofore pending in the district court of the territory within any county in such district, and the records, papers, and proceedings of said district court, and the seal and other property pertaining thereto, shall pass into the jurisdiction and possession of the district court of the state for such county, and, until the district courts of the territory shall be superseded in man-

ner aforesaid, the said courts and the judges thereof shall continue with the same jurisdictions and powers to be exercised in the same judicial districts, respectively, as heretofore constituted under the laws of the territory."

[The motion to docket the case was denied. For a subsequent hearing, see Ames v. Colorado Cent. R. Co., Case No. 325.]

Mr. Poppleton, for the motion.
Smith & Hall, opposed.

DILLON, Circuit Judge. The motion here presented, namely, to docket this cause in the federal court, and for a writ of assistance, derives its importance not only for the large interests involved in the particular cause, but from the fact that the principles upon which it must be determined necessarily fix the status, as respects federal or state jurisdiction, of all other causes pending in the courts of the late territory of Colorado at the time of its admission, August 1st, 1876, into the Union as a state. These considerations have induced me to submit the conclusions at which I have arrived to the justice of the supreme court allotted to the circuit, for his judgment thereon.

In examining the question here arising, the legislation of congress in respect to the admission of other territories as states, and establishing federal courts therein on their admission, has been examined, as well, also, as the several judgments of the supreme court as to the effect of such legislation. Florida: 5 Stat. 742, 788, construed in the leading case of Benner v. Porter, 9 How. [50 U. S.] 235; Hunt v. Palao, 4 How. [45 U. S.] 589. Iowa: Webster v. Reid, 11 How. [52 U. S.] 437. Texas: 9 Stat. 1108, construed in Calkin v. Cocke, 14 How. [55 U. S.] 227. Wisconsin: 9 Stat. 567, 233, construed in McNulty v. Batty, 10 How. [51 U. S.] 72. Nevada: 13 Stat. 30, 440, construed in Freeborn v. Smith, 2 Wall. [69 U. S.] 160. Nebraska: Express Co. v. Kountze, 8 Wall. [75 U. S.] 342.

It is not deemed necessary to refer to this legislation, and to these cases, at any considerable length. They demonstrate the absolute necessity, on the erection of a territory into a state, and the admission of the latter into the Union, of legislative provisions by congress and the state as to causes pending in the territorial courts at the time of such admission.

The effect, judicially declared, of the unconditional admission of a territory as a state, and the erection of federal courts therein, and the extension of the laws of the United States over the same, is ipso facto to extinguish the territorial government, and with it the existence of the territorial courts of the general government. In the Florida case Benner v. Porter, 9 How. [50 U. S.] 235, 241, there was a provision in the constitution of the state, as there is in the

constitution of Colorado, to the effect that all "territorial officers should hold and exercise their respective offices and appointments until superseded under this constitution." This was considered by the supreme court as being done to prevent an interregnum, and to have that effect, not by continuing even sub modo the territorial existence, but by making these officers, by the force of the state constitution, and the assent of congress to the admission of the state into the Union, state officers for the time being.

The territorial courts cease, on the admission of the state, to be courts of the territory, for the territorial government is displaced and abrogated; but, by adoption on the part of the state, with the consent of congress, these courts become the provisional and temporary courts of the state.

The act of congress of June 26th, 1876, in respect to the administration of justice in Colorado, unmistakably proceeds upon this view. It declares that the laws of the United States shall have force and effect immediately on the admission of the state. It created and established at once federal courts in the state, and makes more specific and careful provisions as to the disposition of pending cases, whether in the supreme court of the United States or in the supreme and district courts of the territory, than had been done by congress in any other instance in providing for a change from territorial existence to that of a state. That act determines what shall be done with "all cases" pending in all the territorial courts, "at the time of the admission of said state into the Union." Pending cases which might have been brought in the federal courts established by the act, had such courts existed when the cases were commenced, are transferred to the proper federal court, which is declared to be the "successor" of the territorial courts, a term which implies that these courts cease to exist as courts of the general government. All other cases remain and belong to the courts adopted or established by the constitution of the state. Cases of federal jurisdiction may be such by reason of parties, as where the United States or a federal corporation is a party, or because they arise under the constitution and laws of the United States, or because of citizenship, without respect to subject matter.

The federal character of a case must appear in the pleadings, or of record. If the federal character of a case pending at the time of the admission of Colorado thus appears, it belongs to the federal courts, if the case be such, as to subject matter or parties and amount, as that it might have been brought in such federal court if it had been in existence when the suit was commenced. If the federal character of a pending cause does not thus appear, the court in which it is pending may rightfully proceed therein

after the admission of the state, at least until it is shown to the court that it is one of federal cognizance.

In the present cause the pleadings did not show that it was one of federal character, as there was no averment in the bill of complaint of the citizenship of the plaintiffs. As the cause was in the court and the court was in existence, and the federal character of the cause did not appear, it follows that the court had jurisdiction to act therein after the admission of the state.

It is contended by the defendant company that the complainants have elected to remain in the state court, and that, having done so, they are bound thereby, in virtue of the common law principle that an election once deliberately made is binding and irreversible. In other words, after the 1st day of August, the plaintiffs could have taken steps to show the federal character of the cause, and arrested all further action of that court. Instead of doing this, they invoked the continued exercise of the jurisdiction and powers of that court, and obtained on August [17][2] an order appointing a receiver, and subsequently [August 21][2] procured an order for a writ of assistance, which was issued. After having, with knowledge of all the facts as to jurisdiction, done this, can they afterwards change the forum, and if so, what limitation in point of time exists, and can it be exercised down to the time of final hearing? It is my judgment, in a case whose federal character does not appear of record, that the party who, with knowledge of all the facts, wishes the case to go to the federal court under section 8 of the act of June 26th, 1876, must take his election before voluntarily invoking the action and power of the court; otherwise he is concluded from afterwards electing to reveal its federal character, and have a transfer by virtue of the last mentioned act.

The case, by his consent and action, has become one belonging to the local court, and can only be removed therefrom, if at all, under the removal acts applicable generally to the transfer of causes from the state to the federal courts. It may be true that the plaintiff can, like other suitors elsewhere, have the benefit of the removal acts, if he can bring his case within them, but it is not necessary to determine this point.

The result of these views is that, as the plaintiffs, after the admission of the state, not only voluntarily submitted to the action of the local court, but invoked it and obtained it, they could not afterwards transfer the cause on affidavits filed with the clerk of that court, in the manner here attempted. The motion to docket the cause in the circuit court must therefore be denied.

MILLER, Circuit Justice. I concur in this opinion—in the first part of it, fully; in the

latter part of it, on the ground that the party now seeking to docket the case in the circuit court took active steps in the case after he had the right to have it docketed in the circuit court. But, in the future application of the rule, I should not accept silence or passive inaction in the state courts as conclusive against a party of his election between the two courts. Motion denied.