### DORNE v. RICHMOND SILVER MIN. CO.

1.  *Held*, that the clause in Section 23 of the act providing for the admission
    of South Dakota and other states, approved February 22, 1889, "had
    such courts existed at the time of the commencement of such cases,"
    should be construed to mean, had a state existed in which the federal
    courts could have been legally established at the time the actions were
    commenced.
2.  The plaintiff in this action—which was commenced in the district court
    of the Territory of Dakota, and is still pending—was at the time of its
    commencement, and so continued up to the admission of the State of
    South Dakota, a resident and citizen of the said Territory of Dakota, and
    is now a citizen of the State of South Dakota, and defendant was at the
    time the action was commenced, and is now, a citizen of the State of
    New York.    *Held*, on motion of defendant to transfer cause to the cir-
    cuit court of the United States for the district of South Dakota, that
    his right to such transfer must be determined on the hypothesis that the
    State of South Dakota had been admitted into the Union, and the fed-

eral courts established therein, and the plaintiff a citizen thereof, at the time the action was commenced.

3.  *Held* that, as the United States circuit court would have had jurisdiction of this cause had such a court existed in the State of South Dakota at the time this action was commenced,—the parties, on the hypothesis stated, being citizens of different states,—the case should be transferred to the United States circuit court.

(Syllabus by the court; argued February 5, 1890; opinion filed March 1, 1890.)

Motion for an order transferring the cause from the supreme court of South Dakota to the circuit court of the United States. Allowed. No briefs filed.

The facts are stated in the opinion.

*Van Cise & Wilson,* for appellant.

*Martin & Mason* and *Moody & Washabaugh,* for respondent.

CORSON, P. J.    This cause comes before the court on a motion, made on the part of the defendant and appellant, for an order transferring the case to the United States circuit court, on the ground that it is one of federal jurisdiction, by reason of the citizenship of the parties.    The action was commenced in the district court of Lawrence county in October 1883, and was tried in that court in April, 1889, when judgment was rendered in favor of the plaintiff and respondent for $15,315.70.    In October, 1889, the case was appealed to the supreme court of the territory, and the record was filed in the office of the clerk of that court on the same day.    Upon the admission of the State of South Dakota into the Union, on the 2d day of November, 1889, the case, being then pending in said territorial supreme court, came to the supreme court of the state.    The citizenship of the parties not appearing in the pleadings or record, this motion is made on the verified petition of the defendant setting forth the citizenship of the parties at the time of the commencement of the action as follows:    "That your petitioner was at the time of bringing this suit, and still is, a citizen of the State of New York, and that the said plaintiff was then a citizen of that portion of the Territory of Dakota which is now the State of South Dakota, and still is a citizen of South Dakota, and that the controversy in said action was and is wholly between the said plaintiff and said defendant;" and the petition concludes

with the following request: "Your petitioner therefore requests that this action, and all files, records, and proceedings relating thereto, may be transferred to the circuit court of the United States, to be proceeded with therein in due course of law." The counsel for the plaintiff filed written objections to such transfer stating as the grounds thereof that the petition does not upon its face show said cause was one transferable to said circuit court, or that the same is of a federal character; and upon the argument counsel made the more specific objection that the petition discloses the fact that the plaintiff was at the time of the commencement of the action a resident and citizen of the Territory of Dakota, and was not, therefore, a citizen of a state, within the meaning of the terms used in the constitution of the United States and laws of congress conferring jurisdiction on the federal courts.

In deciding this motion, it will be necessary to give a construction to those sections of the enabling act under which the State of South Dakota was admitted into the Union, providing for the transfer of cases pending in the territorial courts at the time the state was admitted to the federal courts, and more especially that part of Section 23 which provides that all cases "whereof the circuit or district courts by this act established might have had jurisdiction under the laws of the United States had such courts existed at the time of the commencement of such cases," shall be transferred to the United States court.

Before proceeding to an examination of the provisions of the enabling act, before referred to, a brief review of the former laws, and the decision of the courts thereunder, pertaining to the transfer of cases, to the federal courts pending in other territories at the time of their admission as states, will perhaps aid us in arriving at a correct conclusion as to the proper construction to be given the provisions of our own enabling act. Prior to 1847, there seems to have been great uncertainty in the matter of the transfer of cases pending in the territorial courts on the admission of the territories as states; but on the admission of the Territory of Florida as a state, without any special provisions for the transfer of

causes to the federal courts, giving rise to protracted litigation congress proceeded to legislate upon the subject; and, in reference to this legislation, Mr. Justice DAVIS in Express Co. v. Kountze, 8 Wall, 342, says: "On the admission of a new state into the Union, it becomes necessary to provide, not only for the judgments and decrees of the territorial courts, but also for their unfinished business. In recognition of this necessity, congress, after Florida became a state, passed an act providing among other things, that all cases of federal character and jurisdiction pending in the courts of the territory be transferred to the district court of the United States for the district of Florida. The provisions of this act were made applicable, at the time of the time of its passage, to cases pending in the courts of the late Territory of Michigan, and were afterward extended to the courts of the late Territory of Iowa. Congress, in making this provision for the changed condition of Iowa, thought proper, in the same act, to adopt a permanent system on this subject, and extend the provisions of the original and supplementary acts to cases from all territories which should afterward be formed into states." The provisions of the acts above referred to have been, substantially, incorporated into, the Revised Statutes of the United States, and constitute Sections 567, 568 and 704 of the same. While these provisions were in force, the case of Express Co. v. Kountze, above cited, came into the United States circuit court for the State of Nebraska, being transferred to that court from the supreme court of the State of Nebraska, as one pending in the territorial supreme court at the time. of Nebraska's admission as a state, and was afterwards taken on writ of error to the supreme court of the United States. It appears from the statement of facts in the case that the plaintiffs in the court below, Kountze Bros., at the time the action was brought in the territorial court of Nebraska, were residents and citizens of that territory, and continued to be citizens until the territory was admitted as a state; and that defendant, at the time the action was commenced, and at the time of the transfer was a citizen of the State of New York. Objection was taken to the jurisdiction of the supreme court of the United States on

the ground that the case was improperly transferred to the federal court. The court overruled the objection, and held that the case was properly transferred. Subsequently, a similar case, also from Nebraska, was argued in the supreme court of the United States. In that case, it appears from the statement that Baker, the plaintiff below, was, at the time the action was commenced in the district court of the Territory of Nebraska, and for many years prior thereto, had been, a resident and citizen of Nebraska territory, and that the defendant, as in the former case, was a citizen of New York. On objection being taken that the transfer was improperly made from the territorial court to the federal court, it was overruled, and the supreme court held the removal proper. Baker v. Morton, 12 Wall. 151. In both of these cases, the transfer to the circuit court was made on the ground of the citizenship of the parties; and in both cases the plaintiffs were residents and citizens of the Territory of Nebraska when the actions were commenced, and the defendants citizens of the State of New York.

It will be seen, therefore, that in the cases cited the citizenship of the respective parties—the plaintiffs as residents and citizens of the Territory of Nebraska, and the defendants as citizens of the State of New York—when the actions were commenced, are identically the same as those in the case at bar; and hence the cases cited would be decisive of this case, unless congress has, by our enabling act, made a radical change in the law governing the transfer of cases from the territorial to the federal courts in the new states recently admitted. The provisions for the transfer of cases in our enabling act are not new ones, but are at least the provisions in the twenty-third section now more particularly under consideration, copied from the Colorado act passed at the time of the admission of that territory as a state. On the admission of that state, congress made more full and specific provisions for the disposition of cases that had been commenced in the territorial court, and were pending therein when the state was admitted into the Union; and the eighth section of the Colorado act is the one from which the twenty-third section of our act was undoubtedly

copied. The case arising under the Colorado act, called to our attention, is Ames v. Railroad Co., 4 Dill. 251. It appears in that case that the plaintiffs, Ames & Duff, were residents and citizens of Massachusetts, and that the defendant was a corporation, created under the laws of the Territory of Colorado, when the action was commenced in the territorial district court, and that the suit was so pending at the time the territory was admitted as a state. After the admission of the state, the records and proceedings in the case were taken to the United States circuit court for the State of Colorado, and a motion made to docket the same in that court on the ground that the same was a federal case by reason of the citizenship of the parties. In passing upon the motion Judge DILLON wrote an elaborate opinion, which was concurred in by Mr. Justice MILLER of the United States supreme court. While there were many questions discussed in the case arising out of the peculiar provisions in the constitution continuing the territorial officers and judges in office until an election was had, the court seems to concede in the opinion that the case was a proper one, so far as the citizenship of the parties was involved, for transfer to the circuit court, but the court held that the plaintiffs had waived their right to have the case transferred by proceeding actively in the case in the state court after their right to have the case transferred had arisen. There is no intimation in the opinion, though the eighth section was referred to, that any change had been made in the law on that subject, except to make it more full and specific.

With these observations on the law as it formerly existed, and on the adjudications under those laws, we proceed to a consideration of the proper construction to be given the provisions of the enabling act, approved February 22, 1889, under which the State of South Dakota was admitted into the Union, bearing upon the transfer of cases pending in the territorial courts at the time of its admission. Section 21 of that act provides for a circuit and district court, and "that said courts, and the judges thereof, shall possess the same powers and jurisdiction, and perform the same duties required to be performed by other

circuit and district courts and judges of the United States, and shall be governed by the same laws and regulations." Section 22 provides for the disposition of all cases pending in the supreme court of the United States on appeal or writ of error from the supreme court of the territory, and also "that the parties to any judgment in the supreme court of the territory shall have the same right to prosecute appeals or writs of error to the supreme court of the United States as they shall have had by law prior to the admission of such state." Section 23 then provides for all cases pending in the territorial courts as follows: "That in respect to all cases and matters [now] pending in the supreme or district courts of either of the territories mentioned in this act at the time of the admission into the Union of either of the states mentioned in this act, and arising within the limits of any such state, whereof the circuit or district courts, by this act established, might have had jurisdiction, under the laws of the United States, had such courts existed at the time of the commencement of such cases, the said circuit and district courts, respectively. shall be the successors of said supreme and district courts of said territory; and, in respect to all other cases, proceedings, and matters pending in the supreme or district courts of any of the territories mentioned * * * the courts established by such state shall, respectively, be the successors of said supreme and district territorial courts." It is very apparent from an examination of the above section that the courts therein named—the circuit and district courts of the United States—could not have existed at the time of the commencement of this action, for such courts are only established in the states after, or simultaneously with their admission; and, if the above language is to be strictly and literally construed, these courts themselves could have had no existence at the time the action was commenced, and the plaintiff, being a resident of the territory, could not have commenced his action on the ground of citizenship in a territorial court; but such a construction would defeat and obstruct, rather than aid and assist in, the accomplishment of the general purpose and object of the law, and should only be adopted when, under all settled

rules of construction, no other is allowable.    The undoubted purpose of the act was. as far as practicable, to obliterate the disability and disadvantage attaching to citizens of a territory, and clothe them with the rights of citizenship; but a strict construction of the language of this act  would entirely defeat this object.    By construing this act strictly and  literally, as was contended by counsel for plaintiff should be  done, what effect can be given to it?   As we have before said,  there could have existed no such courts as those provided for in the  act in  the Territory of Dakota prior to the  admission of South Dakota as a state; and all the suits pending, and referred to  in  the section must of necessity have been commenced prior to the admission of South Dakota as a state.   Is it not reasonable, then, to conclude that congress intended. by the use of  thewords "had such courts existed," to carry with them the further  and  logical sequence, had a state existed in  which  such  courts  could have been legally established at the time the action  was  commenced?

It seems quite clear to me that congress  intended  by  this act to preserve to parties litigant in  the  territorial  courts, as far as practicable, the rights they had of appeal and  writs  of error to the supreme court of the United States,  had  the  territory continued in existence, and also the  right  of  citizens  of other states to have their cases tried in the  federal  courts  by judges who are supposed to be removed from all local influences and prejudices,—an object the framers of  the  constitution  of the United States had in view in establishing the national judicial system.   I do not see any reason, outside of the  act,  why congress should have changed the existing law upon  the  subject of the transfer of  cases  on  the  admission  of  these  new states, except to make the  provisions  more  full,  specific. and certain; and I am unable to discover in  the  act · any  intention on the part of congress to do so.   I am of  the  opinion,  therefore, that the words "had such courts existed"  were  intended to carry with them the meaning, had such  state existed at the time the actions were commenced, in which such  federal  courts could have been legally established;  and that the rights of par-

ties to have their cases transferred to the federal courts should be determined, so far as the citizenship of the parties is relied upon for the transfer, upon the assumed existence of the state, and the establishment of federal courts therein, at the time of the commencement of the action.

In this case, it clearly appears that, had the State of South Dakota existed as a state, and the federal courts been established therein, at the time this action was commenced, the action could have been brought in or removed to the federal court, as the parties thereto would have been citizens of different states, within the terms of the constitution of the United States and the laws of congress conferring jurisdiction upon those courts. It is therefore ordered that the records, files, and papers in this cause be transferred to the circuit court of the United States for the district of South Dakota. All the judges concur.