## DORNE *v.* RICHMOND SILVER MIN. CO.

*(Circuit Court, D. South Dakota. November 11, 1890.)*

1. COURTS—ADMISSION OF STATES—TRANSFER OF CAUSES.
   Act Cong. Feb. 22, 1889, under which the Dakotas were admitted as states of the Union, provides, in section 23, that, upon the written consent of a party, all cases pending in the territorial courts at the time of admission "whereof the circuit or district courts by this act established might have had jurisdiction under the laws of the United States had such courts existed at the time of the commencement of such cases," shall be transferred to the said federal circuit and district courts. *Held*, that the provision applies to a case in which the plaintiff was a citizen of Dakota territory, and the defendant a citizen of another state, at the commencement of the suit.

2. SAME—CONSTITUTIONAL LAW—DIVERSE CITIZENSHIP.
   Said section 23 does not attempt to give the federal courts jurisdiction, on the ground of diverse citizenship, 'of cases between a citizen of a state and a citizen of a territory, and therefore does not extend such jurisdiction to cases not warranted by Const. U. S. art. 3, § 2, in the words, "to controversies * * * between citizens of different states."

3. SAME—STATE COURTS—CONSTRUCTION OF STATUTE.
   Section 23 provides that no action pending in the territorial courts shall abate by the admission of the state, "but the same shall be transferred and proceeded with

in the proper United States circuit, district, or state court, as the case may be: provided, however, that in all civil actions, causes, and proceedings in which the United States is not a party transfers shall not be made to the circuit and district courts of the United States except upon written request of one of the parties to such action; * * * and, in the absence of such request, such cases shall be proceeded with in the proper state court." *Held* that, upon such request, the state court is deprived of jurisdiction, and the federal court gains exclusive jurisdiction.

On Motion to Remand to Supreme Court of South Dakota.

*Van Cise & Wilson,* for appellant.

*Martin, Mason, Moody,* and *Washabough,* for respondent.

EDGERTON, J. This action was brought by the plaintiff, Victor Dorne, against the Richmond Silver Mining Company in the month of October, 1883, in the district court of the territory of Dakota for the county of Lawrence, to recover damages for breach of contract. The case was tried in April, 1889, and a verdict rendered in favor of the plaintiff April 15, 1889, for $15,375.75. The defendant appealed from the judgment to the supreme court of the territory of Dakota, and the cause was pending on appeal at the time of the admission of South Dakota as a state, on November 2, 1889. The defendant moved to transfer the case from the supreme court of the state to this court, upon the ground of diverse citizenship. At the February, 1890, term, the supreme court of South Dakota transferred the case to this court. The plaintiff now moves the court to remand the case to the supreme court of South Dakota. The motion to transfer the case from the state court to this court was not *ex parte,* but the question was fully presented, *pro* and *con,* by the plaintiff and defendant, and was carefully considered by that court. See 44 N. W. Rep. 1021.

The contention of the respondent is that section 2, art. 3, of the constitution of the United States only authorizes congress to extend the jurisdiction of the federal courts, in cases where no other cause exists than diverse citizenship, "to controversies between citizens of different states," and not between citizens of a state and territory. Section 23 of the enabling act attempts to confer jurisdiction on the federal courts of the states admitted under it in all cases "whereof the circuit or district courts by this act established might have had jurisdiction under the laws of the United States had such courts existed at the time of the commencement of such cases;" that at the time this action was commenced, the plaintiff was a citizen of a territory, and consequently could not transfer his case to the federal court. Therefore, if this section attempts to give the federal court jurisdiction in this class of cases by reason of diverse citizenship, to that extent the law is unconstitutional. This is the contention of the respondent, and upon this ground he asks for an order remanding the case to the state court.

There are three propositions submitted to the court in the consideration of this question: *First.* Was it the intention of congress in the enabling act to embrace this class of cases among those to which the federal courts should succeed the territorial court? *Second.* If it was, is that portion of the act in conflict with article 3 of the constitution of the

United States? *Third.* If so, what court, if any, has jurisdiction of this case?

When a territory is admitted into the Union, the cases then pending in the territorial courts abate, unless congress in some measure, either directly or inferentially, provides for their survival. The territory of Dakota was not admitted by congress into the Union as one state, but was divided into two states, and the two states admitted at the same time. Neither state succeeded the territory except as provided in the enabling act, and, unless congress, by some legislation either in the act of admission or elsewhere, provided for the survival of causes pending at the time of admission, then all such cases abate.

The supreme court, in *Benner* v. *Porter*, 9 How. 246, said, *inter alia:*

"The territorial courts were the courts of the general government, and the records in the custody of their clerks the records of that government; and it would seem to follow, necessarily, from these premises, that no one could legally take the possession or custody of the same without the assent, express or implied, of congress. Such assent is essential, upon the plainest principles, to an authorized change of their custody."

In *Hunt* v. *Palao*, 4 How. 590, the court held that—

"The territorial court of appeals was a court of the United States, and the control over its records, therefore, belongs to the general government, and not to the state authorities; and it rests with congress to declare to what tribunal these records and proceedings shall be transferred, and how these judgments shall be carried into execution, or reviewed upon appeal or writ of error."

Also, in *Express Co.* v. *Kountze*, 8 Wall. 342, Mr. Justice DAVIS, in delivering the opinion of the court, says:

"Before proceeding to consider the merits of this controversy, it is necessary to dispose of the point of jurisdiction which is raised. It is urged that the circuit court had no jurisdiction over the cause, because there was no authority to transfer it. This depends on the construction of the acts of congress relating to the subject. On the admission of a new state into the Union, it becomes necessary to provide, not only for the judgments and decrees of the territorial courts, but also for their unfinished business. In recognition of this necessity, congress, after Florida became a state, passed an act providing, among other things, that all cases of federal character and jurisdiction pending in the courts of the territory be transferred to the district court of the United States for the district of Florida. The provisions of this act were made applicable, at the time of its passage, to cases pending in the courts of the late territory of Michigan, and were afterwards extended to the courts of the late territory of Iowa. Congress, in making this provision for the changed condition of Iowa, thought proper in the same act to adopt a permanent system on this subject, and extended the provisions of the original and supplementary acts to cases from all territories which should afterwards be formed into states. * * * It is said, if cases of a federal character were properly transferable to the circuit court, this was not one of them; because it does not appear that the suit was between citizens of different states. * * * The course of proceeding in the court below shows that the parties to the suit recognized it as being of federal jurisdiction, and it could only be so, as there was no federal question involved, on the ground that the plaintiffs and defendant were citizens of different states."

See, also, *Baker* v. *Morton*, 12 Wall. 153:

"Whenever a territory is admitted into the Union as a state, the cases pending in the territorial courts of a federal character or jurisdiction are transferred to the proper federal court; but all such as are not cognizable in the federal courts are transferred to the tribunals of the new state. Pending cases, where the federal and state courts have concurrent jurisdiction, may be transferred either to the state or federal courts by either party possessing that option under the existing laws."

This action was commenced in the territorial court of Dakota, and was pending in the supreme court of the territory when its courts ceased to exist by the formation and admission of the states of South Dakota and North Dakota into the Union. The inquiry is, what provision, if any, was made for the survival of cases pending in the territorial courts at the time of the admission of the states? Section 23 of the enabling act for the admission of the states professes to make full and complete provision for the survival of all such cases, and reads as follows:

"That, in respect to all cases, proceedings, and matters now pending in in the supreme or district courts of either of the territories mentioned in this act at the time of the admission into the Union of either of the states mentioned in this act, and arising within the limits of any such state, whereof the circuit or district courts by this act established might have had jurisdiction, under the laws of the United States, had such courts existed at the time of the commencement of such cases, the said circuit and district courts, respectively, shall be the successors of said supreme and district courts of said territory; and, in respect to all other cases, proceedings, and matters pending in the supreme or district courts of any of the territories mentioned in this act at the time of the admission of such territory into the Union, arising within the limits of said proposed state, the courts established by such state shall, respectively, be the successors of said supreme and district territorial courts; and all the files, records, indictments, and proceedings relating to any such cases shall be transferred to such circuit, district, and state courts, respectively, and the same shall be proceeded with therein in due course of law; but no writ, action, indictment, cause, or proceeding now pending, or that, prior to the admission of any of the states mentioned in this act, shall be pending in any territorial court in any of the territories mentioned in this act, shall abate by the admission of any such state into the Union, but the same shall be transferred and proceeded with in the proper United States circuit, district, or state court, as the case may be: provided, however, that in all civil actions, causes, and proceedings in which the United States is not a party, transfers shall not be made to the circuit and district courts of the United States except upon written request of one of the parties to such action or proceeding, filed in the proper court; and, in the absence of such request, such cases shall be proceeded with in the proper state courts."

It is admitted that the appellant filed the written request in the proper court.

It is conceded that the United States circuit court would not have had jurisdiction of the action at the time of its commencement, for the reason that the plaintiff was a citizen of a territory; but that is not the question involved in this inquiry. The law provides that, upon a written request, all cases shall be transferred to the federal circuit and district courts after admission, provided such courts would have had juris-

diction of the same under the laws of the United States when.the action was commenced, had such courts existed, and that, as to such cases, the federal courts shall be successors of the territorial court. Now no circuit court of the United States can exist except in a state admitted into the Union. Then, to state the proposition differently, the enabling act gives jurisdiction at the commencement of the action, provided South Dakota had at that time been a state in the Union, and the circuit court of the United States organized therein. This much for the intention of congress in the matter. In view of the history of the admission of new states and the legislation of congress, and the decisions of the supreme court upon this question, it leaves no doubt in my mind as to the intention of congress to provide in the enabling act that the federal court should succeed the territorial courts in this class of cases.whenever a written request was filed, as provided in the act. The next inquiry is whether that provision of the enabling act is unconstitutional. Courts are very reluctant to decide that particular legislation is unconstitutional. The supreme court of the United States, in *Mayor* v. *Cooper*, reported in 6 Wall. 247, makes use of the following language when the question of the constitutionality of an act of congress was raised:

"This court has the power to declare an act of congress to be repugnant to the constitution, and therefore invalid. But the duty is one of great delicacy, and only to be performed where the repugnancy is clear and the conflict irreconcilable. Every doubt is to be resolved in favor of the constitutionality of the law."

The case of *Gaffney* v. *Gillette*, reported in 4 Dill. 264, was in many particulars like the case at bar. The court was asked to remand, and the motion was allowed upon the sole and only grounds that the petitioner had waived his right for removal to the federal court, and had elected to remain in the state court. It would be a matter of surprise that neither the attorneys nor the court should allude to the fact if the petitioner was precluded, upon constitutional grounds, from removing his case to the United States courts, and that the federal court had no jurisdiction because one party was a citizen of a territory when the action was commenced.

I have examined with some care the numerous cases to which my attention has been called, and find that they are cases in which the courts construe the meaning of the words embraced in the several removal acts as to when the diverse citizenship must exist to entitle the petitioner to a transfer from a state court. Now in this case the same difficulty does not exist, for entirely different terms are used, and what construction courts may place on doubtful words in prior laws furnishes slight authority for the interpretation of this. Congress did not attempt to transfer cases to the federal court, where the federal jurisdiction was based upon diverse citizenship, in controversies between citizens of a state and a territory, but only between citizens of different states. The transfer could only be made after the admission of the state. It was then that the case became one of a federal jurisdiction; and the fact that congress declared that the federal courts should succeed in those cases where the cit-

izenship was diverse when the action was commenced did not prevent the cause from becoming one of federal character and jurisdiction after the state was admitted, if the citizenship was diverse when the state was admitted and the cause transferred. It is solely a question of survival and succession. The territory had ceased to exist, and it became a controversy between a citizen of this state and the citizen of another state when, by the act of congress, the succession was established and the transfer effected. The antecedent date, to-wit, the date of the commencement of the action, neither established nor deprived the cause of its federal character. That became fixed when the state was admitted.

Have the state courts any jurisdiction in the premises? Congress has established the succession of cases pending in the territorial courts at the time of admission in the following words: "No proceeding," etc., "shall abate by the admission of any such state into the Union, but the same shall be transferred and proceeded with in the proper United States circuit, district, or state court, as the case may be," etc., with the proviso in reference to the request.

By the terms of the enabling act, "in the absence of such request, such cases shall be proceeded with in the proper state courts." This becomes a condition attached to the grant of jurisdiction to the state court by congress, or, in the words of the act, to the transfer of the case to the state court. This court, then, is the only court which has any jurisdiction of this class of cases pending in the territorial court at the time of admission, where the conditions in the proviso to section 23 of the enabling act have been observed. In order to give the state court jurisdiction, congress, and possibly the state, must have conferred the jurisdiction. After the performance of the conditions of the proviso of section 23, congress has conferred exclusive jurisdiction on the federal courts in this class of cases, and the state in its ordinance has ratified the terms. Consequently either this court has the exclusive jurisdiction, or else no court has jurisdiction.

If the congressional legislation in reference to the survival of this class of cases is unconstitutional, then there is no provision for their survival, and they must abate. The case has been transferred to this court by the supreme court of South Dakota, under the provisions of the enabling act and the constitution of this state, and I find no reason to remand the same.