**Ex parte Andrew Lee MITCHELL.**

**No. 71474.**

Court of Criminal Appeals of Texas,
En Banc.

Feb. 10, 1993.

Rehearing Denied April 14, 1993.

David L. Botsford, Austin, for appellant.

Jack Skeen, Jr., Dist. Atty. and Ann M. Monaco, Asst. Dist. Atty., Tyler, Robert Huttash, State's Atty., Austin, for the State.

OPINION

WHITE, Judge.

This is an application for writ of habeas corpus that was transmitted to this Court pursuant to the provisions of TEX.CODE CRIM.PROC.ANN. Art. 11.07. This Court abated the matter and ordered the trial court to hold an evidentiary hearing and to transcribe the voir dire of applicant's trial. The trial court held two weeks of evidentiary hearings, and then made findings of fact and conclusions of law. The completed record was then transmitted to this Court, along with the trial court's recommendation that all relief be denied.

This Court set the application for submission to decide whether applicant's right to due process was violated by the State's suppression of exculpatory and material information which was within its possession. U.S.CONST. AMEND. XIV. This Court finds that the suppressed statements of Ralph East and Kelly Stroud were both exculpatory and material. Accordingly, we grant relief.

In February, 1981, applicant was convicted of committing the capital murder of Keith Wills on December 26, 1979. TEX.PENAL CODE ANN. § 19.03(a)(2). This Court affirmed the conviction on direct appeal. *Mitchell v. State*, 650 S.W.2d 801 (Tex.Cr.App.1983). At trial, the State proved, mostly through the testimony of applicant's two accomplices[1], that Keith Wills was murdered at approximately 9:00 p.m. on the 26th. The accomplices testified that sometime around 8:30 p.m. on the night of December 26th, applicant, Owens and Mitchell went to a fireworks stand on Highway 110 between Troup and Tyler where Wills was working the night shift. While Owens remained at their car, applicant and his son went to the fireworks stand. According to the accomplices, applicant shot Wills twice in the head at close range during the course of the robbery.

---

**1.** According to the State's theory at trial, applicant committed the robbery-murder of Keith Wills while in the company of Edward Owens and Anthony Mitchell, applicant's son. Owens and Mitchell both testified for the State. In return Owens received a grant of immunity and Mitchell received a promise of ten years' punishment, probated.

**2**

The three men then disposed of some of the property taken in the robbery on their way to applicant's residence. After leaving the residence, the three men went to the Savoy Club and Alfredia Motel in Tyler. According to Owens, they arrived there at approximately 10:00 p.m. Applicant then went to his room at the Alfredia Motel where he took some heroin. According to the evidence at trial, applicant remained there the rest of the night and into the next morning.

On direct appeal, applicant contended there was insufficient evidence to corroborate the accomplice witness testimony. This Court found the following corroboration was sufficient: the independent evidence showed the accomplices and applicant were together shortly before and after the alleged time of the commission of the murder; this testimony placed the three men in the vicinity of the fireworks stand; the bullet fragments removed from the deceased were fired from a .38 calibre weapon (the accomplices testified applicant shot Wills with a .38 calibre weapon that had a tendency to misfire); a witness stated that he saw a .38 calibre handgun in applicant's bedroom a few weeks after the murder; and the medical examiner, Dr. Gonzalez, testified that Wills was shot between the eyes (Owens testified that applicant told him that he shot Wills between the eyes). This Court held that this was sufficient evidence to corroborate the testimony of the accomplices Owens and Mitchell. *Mitchell v. State*, 650 S.W.2d at 804–809. However, there was no corroboration of the accomplices' account of the time of the killing of Wills.

In this habeas action, applicant asserted the State suppressed the testimony of Ralph East, a game warden who worked in Smith County at the time of the robbery-murder, and Kelly Stroud, a deputy sheriff with the Smith County Sheriff's Office. Applicant also argued there is a reasonable probability that the outcome of his trial would have been different if this evidence had not been suppressed. In light of the following facts, we find that we are in agreement with applicant that the statements of East and Stroud were suppressed, in apparent contravention of applicant's pre-trial motion for disclosure of all exculpatory evidence in the State's possession.

Ralph East began working as a State Game Warden in Smith County in 1974. On the evening of December 26, 1979, he was on duty near Troup, checking for poachers. Between 10:00 p.m. and midnight, after applicant had arrived at the Savoy Club, East left Troup to drive home on Highway 110. When he passed the fireworks stand where Keith Wills was working, he noticed that the lights in the stand were turned on. "I noticed a light as if it was a television on and a person sitting behind the counter and I just looked at them and continued. That was all." When he testified at the evidentiary hearing, East was unable to identify the man who he saw sitting behind the counter.

On the morning of December 27, 1979, East was with Justice of the Peace Guthrie in her office in Smith County when a man and his son came in to report that there was a dead man at the fireworks stand. East and Judge Guthrie went to the stand to check out the accuracy of the report. Judge Guthrie remained in the car while East examined the scene. "When we got there, I walked up to the fireworks stand and looked over the counter and viewed the body laying there.... I seen a large hole between his eyes." The deceased wore a plaid shirt. East then returned to the car, parked it so that it blocked the driveway up to the fireworks stand, roped off the crime scene, and waited for the Sheriff's Office to arrive.

Deputy Sheriff Woody Woodhull showed up to handle the investigation. At the evidentiary hearing, East testified that he felt confident that he told Deputy Woodhull at the scene what he had seen the night before. "Nor did I talk to anybody except for Woody Woodhull. I feel very confident that I told him what time I was by there the night—on the 26th." At that time, no one requested that East file a written report regarding his observations of the night of the 26th.

After his conversation with Deputy Woodhull on December 27th, no one else

connected with applicant's trial ever spoke with East about his observations of the fireworks stand on the night of the 26th. The prosecutor who tried applicant for the capital murder of Keith Wills never spoke with East about what he saw on the night of the 26th. The next time East was asked about what he saw on the 26th was when he spoke with applicant's attorney on this writ application on the day before he testified at the evidentiary hearing. It appears that East's statements to Deputy Woodhull were never disclosed by Woodhull to the prosecutor or to applicant's trial counsel. The question of whether East's statements were exculpatory and material will be answered in the discussion of Kelly Stroud's offense report.

Kelly Stroud was a Deputy Sheriff in Smith County at the time of the capital murder of Keith Wills. In December, 1979, Stroud worked patrol duty for the Smith County Sheriff's Office. On December 26th and 27th, Stroud had the 3:00 to 11:00 p.m. shift. At approximately 10:15 p.m. on the 26th, the Sheriff's Office dispatched Stroud to Troup City Hall to investigate an assault. When he finished that call at 12:10 a.m., approximately three hours after applicant allegedly killed Wills and two hours after applicant arrived at the Savoy, Stroud returned to Tyler on Highway 110. Stroud checked in with dispatch and got a call back and time check of 12:15 a.m. He then made the following observation. "As I drove northbound on 110, I noticed that the fireworks stand was still open and observed one subject sitting inside the stand on the north end but did not notice anything unusual about it." Stroud observed that the man was sitting in a chair, that he was alive ("As far as I could tell."), and that he had a plaid shirt on. At the evidentiary hearing, Stroud stated there was no question in his mind that the man sitting

behind the counter was wearing a plaid shirt.

When Stroud arrived at the Sheriff's Office on December 27th to work the 3—11 shift, he learned of the murder at the fireworks stand. Stroud prepared a handwritten offense report because he thought what he had seen was important. "I would probably have turned it straight into C.I.D., Criminal Investigation Division." Stroud did not recall ever being talked to about his report after the 27th. He was confident in the accuracy of his report. On cross-examination, Stroud denied telling Deputy Woodhull that he was unsure if he had seen the man behind the counter on his trip to Troup, or on his return trip. On redirect, Stroud emphasized his certainty that the man behind the counter was wearing a plaid shirt. He also explained that he mentioned the plaid shirt to applicant's counsel without prompting.[2]

The testimony at the evidentiary hearing established that neither Deputy Woodhull, nor anyone else in the Sheriff's Office, informed the prosecutors of Stroud's report. Jim Walker served as an Assistant District Attorney in Smith County until the month prior to the beginning of applicant's trial. Walker participated directly in the investigation of the murder of Wills. Walker did not recall being given, or seeing, Stroud's statement at any time. If he had been made aware of it, Walker testified that he would have turned over a copy of it to applicant's trial counsel.[3] Jim Patterson succeeded Jim Walker as an Assistant District Attorney in Smith County. Patterson testified the first time that he saw Stroud's written statement was at the habeas evidentiary hearing. Patterson also testified that if he had seen it before the trial, he "probably would've given it to applicant's trial counsel."

---

**2.** The matter of Stroud remembering the plaid shirt becomes more important in light of the trial court's finding at the evidentiary hearing that Stroud's veracity was dubious because Stroud failed to mention the plaid shirt in his written report on the 27th.

**3.** Instead, when the trial court considered applicant's motion for discovery prior to his 1981 trial, Walker informed the trial court "the state is unaware of any ... exculpatory evidence at this time." At the evidentiary hearing, Walker explained that he never would have made that statement if he had known of the existence of Stroud's statement.

**4**

We conclude that the statements of East and Stroud were not disclosed by the Smith County Sheriff's Office either to the prosecutors or to the defense counsel in applicant's case. From the testimony of Frank Henderson, Smith County Assistant District Attorney at the time of the evidentiary hearing, it appears that these statements were discovered for the first time by the District Attorney's Office when the trial court ordered him to examine the Sheriff's Office case files to search for exculpatory evidence. We find these statements were concealed by agents of the State, specifically, members of the Sheriff's Office, from the attorneys on both sides at applicant's 1981 trial. We must next resolve whether these statements were exculpatory and material.

This Court's recent decision in *Thomas v. State*, 841 S.W.2d 399 (Tex.Cr.App.1992) controls resolution of this matter. This Court relies upon a three part test to determine whether the State violated applicant's rights to due process under the Fourteenth Amendment:

1) Has there been a failure to disclose evidence?; (2) Is that evidence favorable to the accused?; and (3) Does that evidence create a probability sufficient to undermine the confidence in the outcome of the proceeding?

*Thomas v. State*, 841 S.W.2d at 403–04. As our opinion above reflects, we have held that the State, through its agent, the Smith County Sheriff's Office, failed to disclose to defense counsel the statements and reports of Ralph East and Kelly Stroud.

The issue of favorability is controlled by deciding whether the evidence "if disclosed and used effectively, ... may make the difference between conviction and acquittal." *Thomas v. State, supra;* and *United States v. Bagley*, 473 U.S. 667, at 676, 105 S.Ct. 3375, at 3380, 87 L.Ed.2d 481 (1985). Either exculpatory evidence or impeachment testimony can be favorable. The evidence provided by East and Stroud serves both purposes.

The evidence of East and Stroud is exculpatory because it "tends to ... clear the defendant from alleged fault or guilt."

*Thomas v. State*, 841 S.W.2d at 404; and *Black's Law Dictionary*, p. 566 (5th ed. 1990). In the instant case, the only evidence which tied applicant to the commission of the murder at 9:00 p.m. was the testimony of the accomplices. This time was critically important to the State's case, since the evidence adduced by the State at trial proved that applicant was at the Savoy Club and Alfredia Motel ingesting drugs and whoring from 10:00 p.m. on through the rest of the night. However, the evidence from East and Stroud gave a strong indication that the victim may well have been alive from 10:00 p.m. until 1:00 a.m. The attorneys who prosecuted applicant in the instant case reached the same conclusion.

Jim Walker testified at the evidentiary hearing:

"I think it is exculpatory.... I mean, as a prosecutor, if you have two witnesses that say a murder took place at 9:00 O'Clock at night but there is another witness that says it didn't happen until 1:00 O'Clock, that's exculpatory. It doesn't mean that all of them are being truthful or being correct.... It just means it's exculpatory and should be disclosed."

Walker also explained that his evidence showed applicant was at the Alfreda Motel doing heroin through the rest of the night and into the next morning. Walker believed that Stroud's evidence showed "the man was alive at a time when applicant was laid up in a hotel doing heroin."

Jim Patterson reached the same conclusion as Walker. In light of the specific testimony of applicant's accomplices, Patterson believed the evidence of East and Stroud was exculpatory from his perspective as a prosecutor. Patterson testified that if he had seen the written report of Stroud, he would have wanted to talk to Stroud because, "in view of the information that I had, it didn't make any sense."

We hold that the evidence of East and Stroud was exculpatory and that, in this sense, it was favorable to applicant. We also hold that this evidence qualified as impeachment evidence.

The testimony of East and Stroud would have impeached the testimony of the accomplices on the critical element of when applicant allegedly killed the victim. The above recitation of the evidence in the instant case supports this conclusion. The evidence of East and Stroud would have been favorable to applicant as impeachment evidence.

Lastly, we must resolve whether the evidence of East and Stroud created a probability sufficient to undermine the confidence in the outcome of the proceeding. In other words, was the evidence of East and Stroud material? *Thomas v. State*, 841 S.W.2d at 404. In our effort to answer this question, we examined the evidence of East and Stroud in the context of the overall strength of the State's case. *Thomas v. State, Id; United States v. Bagley*, 473 U.S., at 683, 105 S.Ct., at 3384; and *United States v. Agurs*, 427 U.S. 97, at 113, 96 S.Ct. 2392, at 2402, 49 L.Ed.2d 342 (1976).

If a verdict is only weakly supported by the record, it is more likely to be affected by the non-disclosure of favorable evidence, such as that of East and Stroud, than if it was strongly supported. *Thomas v. State*, 841 S.W.2d at 405. In the instant case, the only evidence which established that applicant shot and killed the victim prior to the time he went to the Savoy Club and Alfredia Motel was the testimony of his accomplices.[4]

Texas statutory law historically casts accomplice witness testimony in an especially suspect light, in that it requires it to be corroborated by "other evidence tending to connect the defendant with the offense committed." TEX.CODE CRIM.PROC. ANN. art. 38.14 (1966); and *Cast v. State*, 164 Tex.Crim. 3, 296 S.W.2d 269, at 271 (Tex.Cr.App.1956) ("An accomplice witness is a discredited witness."). In the instant case, the corroboration offered by the State tended to connect applicant to the commission of the crime, but did so without corroborating the time that the accomplices said applicant shot and killed the victim. We conclude that the instant verdict, in light of the evidentiary support on the issue of the time applicant allegedly shot the victim, was likely to be affected by the non-disclosure of the exculpatory and impeaching evidence of East and Stroud.

In determining materiality, we also considered the potentially adverse affect that non-disclosure of East and Stroud's evidence had on the defense counsel's preparation and presentation of applicant's case. *Thomas v. State*, 841 S.W.2d at 405. As previously noted, East and Stroud's evidence was exculpatory. Both of the Assistant District Attorneys who prosecuted the instant case concluded they would have disclosed this evidence to defense counsel if they had been aware of it. We hold that it was highly probable that the failure to disclose this evidence to defense counsel, as a result of the Sheriff's Office investigator's suppression of it, hampered defense counsel's efforts to prepare a defense which would have created a reasonable doubt that applicant could have been at the fireworks stand at the time the accomplices testified that the murder was committed.

Also, as previously noted, Stroud and East's evidence would have impeached the inherently suspect testimony of the accomplices. If it had been disclosed to defense counsel, he could have used it to controvert and impeach the accomplice's testimony. *Thomas v. State*, 841 S.W.2d at 406. In this context, the failure to disclose the evi-

---

**4.** It is conceivable that evidence could have been presented by the State to corroborate the time of the victim's death. However, the actions of the investigators for the Smith County Sheriff's Office prevented the development of this evidence.

The medical examiner for Smith County, Dr. Gonzalez, performed an autopsy on the victim at 2:30 p.m. on the afternoon of the 27th, the day after the victim was allegedly shot. At trial, he testified that the victim was killed within 24 hours of the time he conducted the autopsy.

At the evidentiary hearing, Dr. Gonzalez testified that there are more tests that he could have performed on the victim to determine a more precise time of death. However, he did not perform those tests. He explained that he did not fix a more precise time of death because he was not requested to do so by the representative of the Smith County Sheriff's Office who was present at the autopsy.

**6**

dence hindered defense counsel's presentation of his case to the jury.

Because defense counsel's preparation and presentation of his case was adversely affected by the non-disclosure of East and Stroud's evidence, and because the verdict in the instant case was weakly supported on the issue of who killed the victim, and when that killing occurred, we hold that the failure to disclose this favorable evidence created a probability sufficient to undermine the confidence in the outcome of the instant trial. *Thomas v. State,* 841 S.W.2d at 407. Applicant's right to due process, by virtue of the Due Process Clause of the Fourteenth Amendment, was violated by the non-disclosure of this evidence. Applicant's 115th allegation is sustained.[5]

The judgment of the trial court is vacated and the applicant is remanded to the custody of the Smith County Sheriff to answer the indictment.

MALONEY, J., not participating.

---

5. Because we have granted applicant relief based upon the deprivation of his right to due process, there is no need to answer his allega-

tion that the failure to disclose the evidence of East and Stroud deprived him of effective assistance of counsel.