Andrew Lee MITCHELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–96–00211–CR.

Court of Appeals of Texas,
Tyler.

Sept. 11, 1996.

David L. Botsford, Austin, for appellant.

Edward J. Marty, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

PER CURIAM.

This appeal arises from the trial court's order of July 11, 1996 denying Appellant, Andrew Lee Mitchell, the relief sought in his pretrial petition for writ of habeas corpus ("Petition"). In that Petition, Appellant asserted six different grounds that he believed barred his retrial. After a three-day pretrial hearing on Appellant's Petition and other pending motions, the trial court granted the writ but denied the Petition. The trial judge made no findings of fact or conclusions of law in support of her ruling. Thereafter, pursuant to TEX.R.APP. P. 44, Appellant appealed the trial court's denial of his petition raising seven points of error. We will affirm.

## I. BACKGROUND

In December of 1979, Keith Wills was found shot to death in his fireworks stand; a cigar box containing from $100 to $150 in cash was also missing from the stand.[1] In January of 1980, when questioned about unrelated matters, Edward Earl Owens confessed to being at the murder scene of Keith Wills. Thereafter, Tony Mitchell, Appellant's son, also admitted his presence at the murder scene, and he implicated his father as the gunman. The State granted Owens immunity, and promised Mitchell 10 years' probation.

During a three-day trial, both Owens and Mitchell testified as accomplice witnesses. According to their testimony, the shooting took place at approximately 8:30 p.m. on the night of December 26th. Evidence also showed that Appellant was in Tyler at the Alfreda Motel at approximately 10:00 p.m. using heroin bought with the proceeds from the robbery of the fireworks stand. Because the victim's time of death was not established by the pathologist and because no testimony conflicted with the accomplices' account as to time of death, the State's theory of the case was that the murder was committed before 10:00 p.m. At the conclusion of the trial, Appellant was convicted of capital murder and sentenced to death. He appealed, and the Court of Criminal Appeals affirmed the conviction concluding that the evidence was sufficient to corroborate the accomplice witnesses' testimony. *Mitchell v. State*, 650 S.W.2d 801 (Tex.Cr.App.1983), *cert. denied*, 465 U.S. 1074, 104 S.Ct. 1431, 79 L.Ed.2d 755 (1984).

Several years later, Mitchell sought post conviction habeas corpus relief raising approximately 124 claims for relief. The Court of Criminal Appeals remanded the case to the 241st District Court of Smith County for an evidentiary hearing, which was ultimately conducted in 1989. At that hearing, it was established that two persons, game warden Ralph East and Deputy Kelly Stroud of the

Smith County Sheriff's Office, had both given statements that they had seen a person sitting in the fireworks stand watching television *after* 10:00 p.m. on the night in question.[2] From the 1989 hearing, it was then determined that the East and Stroud statements had never been turned over to the Smith County District Attorney's office or to the defense. Thus, based on findings from that 1989 hearing, the Court of Criminal Appeals granted Appellant's 115th claim for relief. *Ex parte Mitchell*, 853 S.W.2d 1 (Tex. Cr.App.1993), *cert. denied*, 510 U.S. 864, 114 S.Ct. 183, 126 L.Ed.2d 142. In so doing, the court concluded that suppression of these two exculpatory statements following the defendant's motion for disclosure of all exculpatory evidence in the State's possession "created a probability sufficient to undermine the confidence in the outcome of the instant trial. [citation omitted] Applicant's right to due process by virtue of the Due Process Clause of the Fourteenth Amendment, was violated by the non-disclosure of this evidence." *Mitchell*, 853 S.W.2d at 6. As a result of this decision, Appellant's conviction was vacated, and he was remanded back to the Smith County Sheriff's custody to answer the indictment. *Id.*

Appellant's retrial has been scheduled for September 12, 1996. During preparation for pretrial matters in July of 1996, Assistant District Attorney David Dobbs found in the State's file, a page of handwritten notes from Mike Patterson, the prosecutor at the first trial in 1981. Those notes revealed that prior to the first trial, Patterson did have knowledge of Ralph East's statement that East had seen the victim alive after midnight on the night in question. Additionally at the July 1996 hearing, Frank Henderson, the Smith County Assistant District Attorney who participated in the 1989 evidentiary hearing, testified that he had no recollection "now" of having remembered seeing Patterson's note regarding Ralph East back at the

---

1. The proceeds of the fireworks sales were to have been donated to an orphanage in India.

2. East stated that between 10 p.m. and midnight, he passed the fireworks stand, saw the light on, and saw a person sitting behind the counter.

Stroud stated that he passed the stand at approximately 12:15 a.m. when returning to Tyler from Troup, and he saw that the fireworks stand was open and observed one subject wearing a plaid shirt and sitting inside the stand.

1989 hearing. Henderson further admitted that despite Judge Tunnell's order that the State's file from the first trial be sealed and forwarded to the Court of Criminal Appeals, the State had not done so. On cross-examination, however, Henderson stated that in 1989, he was the person who found Kelly Stroud's report and after discussing it with District Attorney Jack Skeen, he had turned that report over to the defense. He further stated that he had never intentionally withheld any information from the defense during that 1989 hearing.

Hunter Brush, the District Attorney at the time of the first trial, was questioned with regard to the Stroud–East statements and other matters surrounding the first trial. He, however, had no recollection of any significant details. In fact, he did not appear to remember that he had actually participated in the first trial. Brush, however, did testify that if he had known of the Stroud–East statements, he would have pursued indictments against Owens and Tony Mitchell.

Walter Woodhull, an investigator for the Smith County Sheriff's office at the time of Wills' death,[3] testified that Dr. Gonzalez, the pathologist, had refused to perform tests that Woodhull had requested, which would have determined the time of Wills' death. Woodhull testified that during the autopsy, he noticed that Gonzalez was not performing these tests, and he questioned Gonzalez about it. With respect to that confrontation, he testified:

> We argued at the time, but not very much, because he was the boss in that room ... He just kind of blew it off and said we don't do that. And I informed him that where I had come from, all of the coroners did do that. But he said they didn't do it here, and that was it.

Woodhull also testified to a variety of omissions in his investigation of the Wills' shooting, which by his own admission, were not good investigative procedure. On cross-examination, however, he stated that none of these procedures were intentionally omitted to deprive Appellant of a fair trial.

Chantal Woodhull was also an investigator with the Smith County Sheriff's Office at the time of Wills' death. At the July 1996 hearing, she testified that she had had a typed copy of Kelly Stroud's statement and that she had discussed the content of that statement with Jim Walker, and possibly Mike Patterson, the two prosecutors in the Mitchell case.

Following two additional witnesses, the pathologist, V.G. Gonzalez, testified that during the autopsy, he was never asked to conduct a test to determine the time of Keith Wills' death. He further stated that had such a test been requested, it would have been conducted. He further stated that he had never, in any case, refused to conduct a test to determine time of death.

This significant additional testimony introduced at the 1996 hearing was considered by the trial court at the time she denied the merits of Appellant's Petition.

## II. PREFACE TO APPELLANT'S ARGUMENTS ON APPEAL

On appeal, Appellant asks this Court to overturn the trial court's denial of his Petition and enter an order barring his re-prosecution for the shooting death of Keith Wills. In support of his appeal, Appellant presents six points of error, which he claims bar his retrial.[4] The first four points of error have as their foundation the Double Jeopardy Clauses of the Texas and United States Constitutions, while points five and six stem from the state and federal Due Process/Due Course of Law Clauses.

In Appellant's 70 page brief, he devotes extensive time to the facts giving rise to his jeopardy and due process claims. Because, however, we believe that the resolution of his points of error do not turn on facts, but upon interpretation of existing law, we will not

---

3. Woodhull and his wife Chantal had previously been employed by Hunter Brush as investigators for the Smith County District Attorney's office. However, they left employment there following discontinuance of the grant money budgeted for those positions.

4. Appellant also raises a seventh point of error pertaining to the accelerated briefing schedule set by this Court. That point will be addressed last.

devote significant time to a discussion of the facts before us. Instead, for purposes of addressing Appellant's points of error, we will assume without deciding that as a result of the July 1996, pretrial hearing in this case, intentional prosecutorial misconduct was shown.

### III. APPELLANT'S STATE AND FEDERAL DOUBLE JEOPARDY CLAIMS

#### A. STANDARD OF REVIEW

■ Citing *U.S. v. Arreola–Ramos,* Appellant asserts that in the pretrial habeas corpus context, the standard of review of a double jeopardy claim is *de novo.* 60 F.3d 188 (5th Cir.1995). In that case, the court stated: "Double jeopardy raises a legal issue of constitutional dimensions; we review de novo the denial of a motion to dismiss on double jeopardy grounds." *Id.* at 191. Although the State has not challenged this federal standard of review, in Texas, we note that an appeal from the denial of pretrial habeas corpus relief sought on double jeopardy grounds must be reviewed under the "clearly erroneous" standard of review. *Ex parte May,* 852 S.W.2d 3 (Tex.App.—Dallas 1993, pet. ref'd). In *May,* the court stated:

> We look to the record to see if the record leaves us with the definite and firm conviction that the trial court made a mistake. [citation omitted] The clearly erroneous standard accords great deference to the trial court's findings and conclusions. This is so because the trial court bases its rulings in part upon a credibility determination that is not reviewable by the appellate court. [citation omitted] We view the evidence in the light most favorable to the trial court's ruling. [citation omitted].

*Ex parte May,* 852 S.W.2d at 5. Although we perceive that the result under either of these standards of review would be the same, we will apply the higher *de novo* standard to Appellant's four double jeopardy points of error.

#### B. ALLEGED VITIATION OF APPELLANT'S RIGHT UNDER STATE AND FEDERAL LAW TO HAVE HIS TRIAL COMPLETED BY A PARTICULAR TRIBUNAL

■ By his first point of error, Appellant alleges that because the State of Texas engaged in intentional misconduct, Appellant's retrial is barred under the Double Jeopardy Clause of the Fifth Amendment to the UNITED STATES CONSTITUTION made applicable to the States by the Fourteenth Amendment. Appellant argues that under the Double Jeopardy Clause, he has the right to have his trial completed by a particular tribunal and that this right was violated because of misconduct on the part of the State.

Given the apparent misconduct and omissions of certain county officials and employees, at first blush, this argument is very seductive. However, a careful review of controlling case law causes us to conclude that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution does not preclude retrial of Appellant's case.

■ Ordinarily, an accused invokes his right to be tried by a particular tribunal after he has been forced by the prosecution into moving for mistrial. *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). Generally, a defendant's successful motion for mistrial will not bar a retrial; however, *Kennedy* establishes a very narrow exception to that rule: "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Kennedy,* 456 U.S. at 675, 102 S.Ct. at 2089.

The Court, however, prefaced this holding with the following reasoning that places this narrow exception in perspective. First, it noted that the Double Jeopardy Clause does not offer a defendant a guarantee that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding. *Kennedy,* 456 U.S. at 672, 102 S.Ct. at 2087. Second, this exception is designed to prevent an accused from being unduly harassed into moving for mistrial because the prosecution is unhappy with the present tribunal, and hopes for a better one in the future.

A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." [citation omitted] Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." [citation omitted]. (emphasis added).

*Kennedy,* 456 U.S. at 676, 102 S.Ct. at 2089.

In *United States v. Dinitz,* the Court held that the Double Jeopardy Clause "bars retrial where 'bad-faith' conduct by judge or prosecutor, [citation omitted] threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976) (citations omitted)(emphasis added). In *Kennedy,* the court clarified this language to show that a prosecutor's "bad-faith" meant intentional goading. *Kennedy,* 456 U.S. at 674, 102 S.Ct. at 2089. The highlighted portion of that statement, however, shows why such intentional misconduct bars retrial, *i.e.,* it was intended to cause the defendant to abort the trial, so the prosecution might gain circumstances more likely to produce a conviction on retrial. *Dinitz,* 424 U.S. at 610–11, 96 S.Ct. at 1081. Moreover, as noted in *Kennedy,* when the prosecution goads a defendant into moving for mistrial, the accused no longer retains that important primary control over the course of his trial; instead, he is forced to seek a mistrial before a verdict is reached. *Kennedy,* 456 U.S. at 674–76, 102 S.Ct. at 2089.

Here, unlike *Kennedy,* the prosecutorial misconduct at issue was not discovered until long after completion of the first trial; thus, it was not the type of *"Kennedy* misconduct" which goaded Appellant into seeking a mistrial. Consequently, the Fifth Amendment right *Kennedy*'s holding was designed to protect was not implicated.

Because *Kennedy*'s application is limited to intentional prosecutorial misconduct in the mistrial context, Appellant urges us to adopt the Fifth Circuit's reasoning in *Robinson v. Wade,* which advocates extending *Kennedy*'s bar to cases where prosecutorial misconduct results in a tainted verdict. 686 F.2d 298 (5th Cir.1982). In that case, the accused had been convicted and sentenced to death three different times for the same offense. After receiving his third reversal and remand for new trial, he sought relief urging that a fourth prosecution was prohibited under the Double Jeopardy Clause of the Fifth Amendment to the UNITED STATES CONSTITUTION. In addressing the question, the Fifth Circuit acknowledged that *Kennedy* only barred retrial following intentional prosecutorial over-reaching in the mistrial context; however, it opined that in the future, the doctrine might and probably should be extended to prosecutorial misconduct not discovered until after trial. *Robinson,* 686 F.2d at 306–08. Ultimately, however, the Fifth Circuit decided that the district court below had not erred in finding that the prosecutorial conduct complained of was not intentional. Therefore, it concluded that it need not decide whether it would extend the reasoning in *Kennedy* to the case before it. *Robinson,* 686 F.2d at 308.

While we do not question the sagacity of the Fifth Circuit's reasoning in *Robinson,* it must be noted that nearly fourteen years after the issuance of *Robinson,* the Supreme Court has still not extended *Kennedy*'s narrow holding barring retrial to cases where prosecutorial misconduct results in a tainted verdict. Until it does so, we must decline to adopt the reasoning so eloquently expressed but so neatly side-stepped in *Robinson.*[5]

Having determined what type of error the instant case does not present, it is now incumbent upon us to specify what kind of error such prosecutorial misconduct does

---

**5.** Appellant also urges us to consider the law of several other jurisdictions that have barred retrial of cases where prosecutorial misconduct has led to a tainted verdict. Without individually addressing each of those cases, suffice it to say that we decline to adopt their reasoning as it tends to stretch the Double Jeopardy Clause beyond the boundaries currently established by United States Supreme Court holdings.

present. Despite the fact that Appellant has cleverly presented the State's misconduct in the context of a pretrial habeas corpus proceeding, the prosecutorial misconduct complained of really appears to be a routine due process violation like that dealt with in *Brady v. Maryland* and many other cases like it. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady*, as here, the appellant had been sentenced to death. However, after discovering that the State had wrongfully suppressed an important exculpatory statement made by the accomplice witness, he sought post-conviction relief. After examining the case, the Supreme Court stated: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 86, 83 S.Ct. at 1196–97. Having concluded there was a due process violation, the court awarded appellant a new trial on punishment since the suppressed exculpatory evidence pertained to a punishment issue. Before making its ruling the court, however, noted:

> The principle of *Mooney v. Holohan*[6] is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly.

*Brady*, 373 U.S. at 87, 83 S.Ct. at 1197.

This principle still exists today. In *Kennedy*, the Court noted that if a trial court were to improperly deny a motion for mistrial on grounds of prosecutorial goading, the remedy on appeal for such error would be a new trial, and not a bar of re-prosecution. *Ken-*

*nedy*, 456 U.S. at 676–78, 102 S.Ct. at 2090. Although the efficacy of this logic has been a subject of criticism, it is, nevertheless, the law at this time. *See Robinson*, 686 F.2d at 307.

Thus, having found no authority that would bar Appellant's re-prosecution on grounds that he had been denied his right to be tried by a particular tribunal under the Double Jeopardy Clause of the Fifth Amendment to the UNITED STATES CONSTITUTION, we hold that the trial court did not err in denying Appellant's petition on that basis. Moreover, we decline Appellant's invitation to pioneer such an interpretation of the Double Jeopardy Clause. Appellant's first point of error is overruled.

■ By his second point of error, Appellant urges that because of the State's misconduct, his re-prosecution should have been barred under the Double Jeopardy Clause of the TEXAS CONSTITUTION.[7] In support of his position, Appellant directs our attention to the Court of Criminal Appeals' recent decision in *Bauder v. State*, 921 S.W.2d 696 (Tex.Cr.App.1996). In *Bauder*, the court interpreted this state's Double Jeopardy Clause as requiring that a successive prosecution be barred under slightly broader circumstances than those set forth by the Supreme Court in *Kennedy*. In so doing, the Court of Criminal Appeals stated:

> [U]nlike the Supreme Court, we do not think the prosecutor's specific intent is a relevant aspect of the inquiry ... We therefore hold that a successive prosecution is jeopardy barred after declaration of a mistrial at the defendant's request, not only when the objectionable conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prose-

---

**6.** In *Mooney v. Holohan* the Court stated:

> It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimen-

tary demands of justice as is the obtaining of a like result by intimidation.

294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935).

**7.** Article I, Section 14 of the TEXAS CONSTITUTION provides in pertinent part: "[n]o person, for the same offense shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."

cutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request.

*Bauder,* 921 S.W.2d at 699.

Except for this difference in the prosecutor's scienter, the *Bauder* and *Kennedy* tests appear to be the same. Further, like *Kennedy, Bauder* makes no attempt to bridge the gap between prosecutorial misconduct resulting in a mistrial and prosecutorial misconduct resulting in a tainted verdict. What is undoubtedly clear, however, is that *Bauder,* like *Kennedy,* speaks solely to prosecutorial misconduct in the mistrial context. In fact, almost an entire page of the *Bauder* opinion is spent describing the rarity of *Bauder* error, and the particular mistrial context under which it would bar re-prosecution. *Bauder,* 921 S.W.2d at 698.

Given that *Bauder*'s application is specifically limited to prosecutorial misconduct in the mistrial context, we decline to extend its reasoning to the instant case. Such an application of *Bauder* would require us to take a greater leap in interpreting our state's Double Jeopardy Clause than appears to be warranted under current case law. While under *Heitman* [8], the Court of Criminal Appeals may choose to interpret our Double Jeopardy Clause to bar retrial under circumstances like those present here, under existing law, we cannot do so. Accordingly, Appellant's second point of error is overruled.

### C. ALLEGED VITIATION OF HIS RIGHT UNDER FEDERAL AND STATE LAW TO BE FREE FROM SUCCESSIVE PROSECUTIONS

By his third point of error, Appellant alleges that but for the State's misconduct, the evidence against him at the first trial was insufficient as a matter of law to convict him; consequently, he alleges that the trial court erred in denying his petition based upon his right under the Fifth Amendment to the UNITED STATES CONSTITUTION against twice being put in jeopardy. Appellant's fourth point of error alleges the same violation under the Double Jeopardy Clause contained in Article I, Section 14 of the TEXAS CONSTITUTION. Because Texas employs the same standard for legal sufficiency of the evidence as set forth in *Jackson v. Virginia,* we will address these points together. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see Jones v. State,* 833 S.W.2d 118, 122 (Tex.Cr. App.1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993).[9]

By these points of error, Appellant, without citing any authority entitling him to it, seeks review of the legal sufficiency of the evidence from the first trial; he, however, asks that all of the evidence *including that wrongfully suppressed by the State* be considered to determine whether there was legally sufficient evidence to sustain a conviction at the first trial. These points are without merit for several reasons.

■ First, even under the guise of double jeopardy, challenges to the sufficiency of the evidence are not properly reviewed in a habeas corpus proceeding when the law affords a remedy by appeal. *See Ex parte Williams,* 703 S.W.2d 674 (Tex.Cr.App.1986). Here, Appellant has already had an opportunity to challenge the legal sufficiency of the evidence introduced at his first trial, and will have another opportunity, if necessary, to do so following retrial.

■ Second, despite the State's wrongful suppression of Stroud and East's statements, these statements are nevertheless not yet "evidence" admitted at any trial. Thus, at this juncture, their inclusion would not be proper in a legal sufficiency analysis. Third, Appellant has already obtained a new trial, as requested, on the basis that these statements might undermine confidence in the outcome of the original trial. In *Ex parte Mitchell,* the Court of Criminal Appeals reviewed the evidence from the first trial in conjunction with that from the 1989 eviden-

---

8. *Heitman v. State,* 815 S.W.2d 681 (Tex.Cr.App. 1991).

9. The standard of review set forth in *Jackson v. Virginia* requires that the reviewing court view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. at 318–20, 99 S.Ct. at 2789; *Jones,* 833 S.W.2d at 122.

tiary hearing. As a result of that review, it determined that Stroud and East's statements were exculpatory evidence and that failure to disclose them "created a probability sufficient to undermine the confidence in the outcome of the instant trial." *Ex parte Mitchell,* 853 S.W.2d at 6. Thereafter, it sustained Appellant's 115th claim for relief and as requested,[10] Appellant was remanded to the Smith County Sheriff's to answer the indictment, this time, armed with the Stroud and East statements. *Id.* Thus, Appellant has already received the relief he requested for the wrongful suppression of this evidence. It now remains for a jury to determine the effect these statements will have on his guilt or innocence.

■ Finally, as the State points out, even if we were to engage in the requested review using the *Jackson v. Virginia* standard of review, Appellant would not prevail. Under *Jackson* since we are required to review the evidence *in the light most favorable to the verdict,* this test would require that we presume a jury had convicted Appellant.[11] Thus, because of this *presumed* conviction, we would again have to presume that since the jury chose to convict Appellant, it must have believed the accomplices' testimony as to when the shooting occurred rather than the evidence produced by Stroud and East. TEX.CODE CRIM. PROC. 38.04 (Vernon 1979); *see Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Cr.App.1986)(on motion for rehearing), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988)(holding that once competent evidence is presented, it is the responsibility of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony). Finally, as noted above, the Court of Criminal Appeals already determined in *Mitchell v. State* that "the evidence independent of the accomplice witnesses tends to connect the appellant with the crime charged and is sufficient to corrob-

orate the accomplice witnesses' testimony." 650 S.W.2d 801, 808. Since independent "time of death" evidence was not used to corroborate the accomplices' testimony, Stroud and East's statements do not undermine the independent evidence used to corroborate the accomplices' testimony in the first appeal. Consequently, the Court of Criminal Appeals' holding that the accomplice witnesses testimony was sufficiently corroborated is unaffected by the Stroud–East statements.

■ While the addition of East and Stroud's statements to the evidence adduced at the first trial might cause a reversal under a factual sufficiency challenge, *Clewis v. State* under a legal sufficiency challenge, the verdict would have to be upheld, 922 S.W.2d 126 (Tex.Cr.App.1996).[12] For these reasons, Appellant's third and fourth points of error are overruled.

## IV. APPELLANT'S STATE AND FEDERAL DUE PROCESS CLAIMS

■ In his fifth point of error, Appellant alleges that the trial court erred in refusing to bar his retrial because the State's investigation and first trial abrogated his right to due process of law as guaranteed by the Due Process Clause of the Fourteenth Amendment to the UNITED STATES CONSTITUTION. By his sixth point of error, Appellant alleges that he has suffered this same type of harm through violation of his rights to Due Course of Law and Equal Protection under Article I, Sections 13 and 19 of the TEXAS CONSTITUTION.

■ Unfortunately, these points are not appropriate for review in a pretrial habeas corpus proceeding; therefore, we will not address them. A petition for pretrial writ of habeas corpus is an extraordinary remedy that should not be entertained when there is

---

10. At the conclusion of his 115th claim for relief, Appellant stated: "A new trial is appropriate and mandated because Applicant did not receive a fair trial at guilt/innocence or at punishment or a fair appeal due to the suppression of evidence by the State."

11. The State is not entitled to appeal from a verdict of acquittal. TEX.CODE CRIM. PROC. 44.01.

12. *Clewis v. State* authorizes an appellant to challenge the factual sufficiency of the evidence on appeal; however, unlike a successful challenge to the legal sufficiency of the evidence which results in an acquittal, a successful *Clewis* challenge results only in the granting of a new trial.

an adequate remedy by appeal after final judgment; it is not a substitute for an appeal. *Ex parte Gonzales,* 667 S.W.2d 932, 935 (Tex.App.—Austin 1984, pet. ref'd). While exceptions have been made where double jeopardy, bail, and the validity of a penal statute have been raised, none has been made for due process and equal protection violations. *Ex parte Matthews,* 873 S.W.2d 40, 44–45 (Tex.Cr.App.1994)(Campbell, J. dissenting); *Gonzales,* 667 S.W.2d at 935; *accord Arreola–Ramos,* 60 F.3d 188, 191 (5th Cir.1995). The types of violations alleged by Appellant, regardless of the facts, simply do not bar retrial at this time; instead, his remedy is a new trial.[13] Accordingly, points of error five and six are overruled.

## V. APPELLANT'S CHALLENGE TO THIS COURT'S ACCELERATED SUBMISSION SCHEDULE

By his seventh and final point of error, Appellant alleges that the accelerated appeal ordered by this Court (dated August 8, 1996) granted on the basis of the State's misrepresentation of Appellant's requested relief, may deny him a full and fair hearing of his claims for relief in violation of his rights to due process and equal protection under the Fourteenth Amendment of the UNITED STATES CONSTITUTION and Article I, Sections 13 and 19 of the TEXAS CONSTITUTION. This final point of error is not only multifarious, it places this Court in the admittedly awkward position of having to review the propriety of one of its prior rulings. Nevertheless, we will address it.

### A. BACKGROUND

On July 30, 1996, Appellant filed with this Court his emergency motion to stay the trial set for September 5, 1996, pending interlocutory appeal of the trial court's order denying him relief under his Petition. His interlocutory appeal was filed pursuant to TEX.R.APP. P. 44.[14] The first 10 pages of that 59–page motion dealt with the request for an emergency stay. The remaining pages, however, presented a tentative brief and overview of the six points of error this Court could probably expect to be raised in Appellant's brief. Before the court ruled on the emergency motion, the State filed a response requesting that we set accelerated briefing deadlines and attempt to determine the appeal prior to the September trial setting. In support of its response, the State asserted that this case had been awaiting retrial since 1993, and if the current trial schedule were bypassed as a result of this appeal, it would be unlikely that the case could again be set for trial before 1997. Appellant replied, again requesting that we stay the trial.

Thereafter, on August 8, 1996, this Court entered an order granting the State's request for accelerated submission and stating its intention to deliver an opinion prior to August 30th. In that same order, however, it, stayed further trial court proceedings to protect its appellate jurisdiction. That same day, the court also entered a scheduling order setting accelerated briefing deadlines based upon the assumption stated therein that the statement of facts would be timely filed. On August 12, 1996, however, Appellant filed a motion for extension of time to file the statement of facts and extend the briefing deadlines. On August 13, 1996, after entertaining the motion, this Court withdrew its order of August 8th, granted Appellant's motion for extension on the statement of facts and briefs, and reset oral argument

**13.** The principal case upon which Appellant relies as support for his position is *Ex parte Brandley,* 781 S.W.2d 886 (Tex.Cr.App.1989). As did the instant case, *Brandley* resulted in applicant's conviction being set aside and his remand to the sheriff to face the indictment on which he was convicted.

**14.** After establishing accelerated deadlines for filing the record, Rule 44(a) provides in relevant part:

The appellate court may shorten or extend the time for filing the record if there is a reasonable explanation for the need for such action. When the record is received by the appellate court, the court shall set the time for the filing of briefs, if briefs are desired, and shall set the appeal for submission.

Rule 44(b), which speaks to submission of the case, provides in relevant part: "Such cases, taken to the court of appeals by appeal, shall be heard at the earliest practicable time ... The only design of the appeal is to do substantial justice to the party appealing."

for September 3, 1996.[15] Although the court stated therein that it intended to deliver an opinion prior to September 5, 1996, the trial court thereafter rescheduled its special venire for September 12, 1996, effectively extending the trial date by one week.

### B. THE MERITS OF THIS POINT

The court's briefing and submission deadline did not violate Appellant's due process and equal protection rights. In short, the August 8th order about which Appellant complains was withdrawn by this Court on August 13, 1996, and at Appellant's request, the deadlines for the record, briefs, and consequently, arguments were extended. We additionally note, however, that in his July 30th emergency motion for stay, Appellant displayed his readiness to proceed with the appeal by presenting this Court with a tentative 49–page brief propounding six proposed points for review. Thereafter, following the court's withdrawal of the complained-of August 8th order and the granting of Appellant's requested extensions on the statement of facts and briefs, Appellant timely filed his 70–page brief raising those six points of error. Following the State's timely filing of its brief, this Court granted Appellant leave to file a 20–page reply brief. Thereafter, at arguments on September 3, 1996, this Court gave Appellant the full amount of time he requested for argument, and thereafter, it extended that time freely upon Appellant's request during both his initial argument and rebuttal.

Additionally, this Court's order stating that it *intended* to deliver an opinion before September 5, 1996, was merely a tentative pronouncement. Nothing better illustrates the tentative nature of that date than the fact that September 5th has already passed without this Court's delivery of an opinion in this case. Further, Appellant's concerns about the voluminous record before us are likewise without merit. As noted above, although factually intensive, the issues raised by this appeal turn on legal doctrines rather than fact-based issues. Consequently, this Court has not been burdened with setting forth all of the particulars of this voluminous record in its opinion.

Appellant having, in this Court's view, been given the full and fair review to which he was entitled under law, we overrule his seventh and final point of error.

### VI. CONCLUSION

It must be said that while we were moved by the disturbing facts of this case, we nevertheless must conclude that under the points of error presented, Appellant's retrial is not barred. His remedy under both the Texas and United States Constitutions, however, lies in a new trial. Although some may consider this an inadequate solution, it must be remembered that Appellant's rights are to be placed in the balance with those of society. As Justice Cardozo wrote: "[J]ustice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true." *Snyder v. Commonwealth of Massachusetts,* 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674 (1934). The principal goal, after all, is not to punish society for the misdeeds of the prosecution but to obtain a fair criminal trial for the accused. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963).

For the reasons stated herein, we affirm the trial court's order denying Appellant's Petition.

---

15. The court also lifted the stay to the extent necessary to allow pretrial matters scheduled for August 30, 1996, to proceed.