## BAKER *v.* MORTON.

1. A deed procured through fear of loss of life, produced by threats of the grantee, may be avoided for duress.
2. A judgment being but a general lien and the creditor under it obtaining no incumbrance but on such estate as his debtor really had, the equity of such creditor gives way before the superior right of an owner in the land who had conveyed it to the debtor only by duress and who never parted with possession.
3. *Brown* v. *Pierce*, 7 Wallace, 205, identical with this case in principle and almost identical with it also in fact and circumstance, affirmed.

APPEAL from the Circuit Court for the District of Nebraska; the case was this:

In the spring of 1857 there existed, near Omaha, in the then Territory of Nebraska, an organization known as the Omaha Claim Club. 'The object and purpose of the club was to nullify the land laws of the United States, to the end that the members of the club, who were engaged in land speculations, might hold and control the public lands in the vicinity of Omaha to the exclusion of actual settlers. The club numbered from 100 to 200 men. It made laws and promulgated decrees to suit its purposes, and enforced their observance with revolvers, guns, bayonets, ropes, and other appliances. It was regularly officered. The sheriff of the county, secretary of the Territory, mayor of the city, and register and receiver of the land office, all held high positions in the club. It had stated meetings, and when any supposed exigency should arrive the band would assemble at an hour's notice and be ready for business. It drove actual settlers from their claims, burned down their cabins, and marched

the settlers, surrounded by armed men, to the land office of the United States, and compelled them to withdraw their applications for land. If the subject was obstinate, he was taken to the Missouri River, and, with a rope around his neck, thrown in and pulled out, and thrown in again, and the operation repeated as often as might be necessary in order " to bring the subject to his senses, so he would agree to abide the law of the land." The character and objects of the club, while it lasted, were notorious.

In this state of things Baker, in the spring of 1857, settled upon and improved a quarter of a section of land near Omaha; erected a house and continued to occupy it until August 10th, 1857, when he entered the land under the provisions of the pre-emption laws of the United States. Having acquired title, and being thus in possession, one Pierce, at that time a member of this club and a man of influence in it, though then and subsequently a citizen of New York, claimed the land by virtue of its laws and regulations, and taking several members of the club with him, went to Baker's house and demanded a deed of the land. Baker, on the 10th of August, 1857, executed to him such a deed; Pierce, however, suffering Baker to remain in possession either of this or of an adjoining tract (which he had got in the same way that he did this), under some sort of lease. Pierce being thus invested with a paper title, Morton, a respectable banker of New York, where, as already said, Pierce resided, lent him money, and the debt not being paid sued him and got judgment.

In this state of things Baker, in September, 1860, still residing in Nebraska, filed a bill in the Territorial court of that Territory against Pierce as grantee, and Morton as claiming an interest, to set aside the deed as obtained by duress and without consideration. It set forth the respective residences of himself in Nebraska, and of Pierce and Morton in New York; the demand for the deed by Pierce, and execution of it by Baker to him. It alleged that when Pierce and his company demanded the deed, they threatened to take Baker's life by hanging or drowning him if he did

not comply with the demand; that the club had posted handbills calling the members together to take action against Baker; and that he made the deed knowing all this, and *in actual fear of his life, or of great bodily harm;* that he received no consideration whatever for the deed.

Pierce did not appear to the bill, which was taken *pro confesso* against him, and decree rendered accordingly.

Morton answered, alleging that he had no knowledge as to the circumstances under which the deed had been procured and that he could not answer to the charge, on belief or otherwise; but upon information he denied the same and alleged that the deed was freely and voluntarily made, and that Pierce was the true and lawful owner of the premises, free from all claim.

The cause was heard on pleading and proofs in the District Court for Nebraska Territory, by the then Chief Justice, who rendered a decree dismissing the bill. It was then carried by appeal to the Supreme Court of the Territory, where it was pending when Nebraska was admitted into the Union. Thereupon, owing to the citizenship of the parties—the complainant in the State of Nebraska, and the defendants in New York—and according to the usual rule by which cases that by reason of the character of the parties, belong most naturally to the Federal courts are transferred into those courts, and those which cannot be taken into *them* are transferred to the State courts, this case was removed into the Circuit Court of the United States. Here it was heard again and a decree given dismissing the bill. The complainant appealed to this court.

The reader who has read and remembers the case of *Brown* v. *Pierce,* which came before this court two terms ago and is reported in 7th Wallace, 205, will have seen, of course, that the case is identical in principle and scarcely at all variant in fact from that one.

The facts alleged by the bill being considered by the court, here as there, fully proved by the evidence, the only questions which remained were:

1. Whether a deed executed without any consideration

and only because the party making it is put in fear of his life, or of great bodily harm, may be avoided?

2. Whether the case made was one for relief as against Morton, whose good faith in lending his money was not to be questioned.

*Messrs. Redeck and Briggs, for the appellant; Mr. Woolworth, contra.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Territorial courts are created by an act of Congress, and they usually possess jurisdiction of controversies of a civil nature, without regard to the inquiry whether the controversies, if they had arisen in a State, would have been cognizable in the tribunals of the State or in the Federal courts.*

By the organic act creating the Territory of Nebraska the judicial power of the Territory was vested in a Supreme Court and certain district courts, and the provision was that the jurisdiction of those courts should be as prescribed and limited by law.†

Whenever a Territory is admitted into the Union as a State the cases pending in the Territorial courts of a Federal character or jurisdiction are transferred to the proper Federal court, but all such as are not cognizable in the Federal courts are transferred to the tribunals of the new State. Pending cases, where the Federal and State courts have concurrent jurisdiction, may be transferred either to the State or Federal courts by either party possessing that option under the existing laws.

On the seventh of September, 1860, the appellant filed his bill of complaint in one of the district courts of the Territory against Roswell G. Pierce and the appellee, in which he alleged that he, the appellant, under the laws of the United States, settled, improved, and entered as a pre-emptor the southwest quarter of section eight, township fifteen north,

---

* 1 Stat. at Large, 77; 9 Id. 209; Benner *v.* Porter, 9 Howard, 235.
† 10 Stat. at Large, 280.

range thirteen east, in the county of Douglas; that the first-named respondent claimed to own the tract so settled, improved, and entered as a pre-emption right by the complainant; that the said respondent made claim to the same, not by virtue of any law of the United States, but by virtue of the rules and regulations of what was known at the time as the Omaha Claim Club, an organization composed of one or two hundred men, the object of which was to protect every claimant, whether resident or non-resident, in holding three hundred and twenty acres of land as a claim upon the public lands of the United States; that a few days before he, the complainant, entered the land the said Pierce and his agent and a few other persons, members of the said club, came to the house of the complainant, and that the said Pierce, as the leader of the party, assured the complainant that unless he would agree to deed the tract, in case he pre-empted the same, to the said Pierce, that he, the said Pierce, with the assistance of the said claim club, would take his life by hanging or drowning him, or in such other manner as the agents of the club might think fit and proper to employ; that on the tenth of August, 1857, he entered the tract under the pre-emption laws of the United States, when the said Pierce, his agents, and certain members of that club again came to him and repeated the threats before used, and assured him that unless he immediately conveyed the tract to the said Pierce they would carry their threats into execution, and that he, by means of those threats and through fear that the threats would be carried into effect if he refused to convey the land, on the same day conveyed the tract to the said Pierce by deed in the usual form, which was duly acknowledged.

Based upon these allegations the complainant charges that the conveyance made by him was procured by threats and through fear of death and without consideration. Morton, the appellee, was also made a party to the bill of complaint, because he was a judgment creditor of the other respondent, and claimed an interest in the land by virtue, as he alleged, of a lien created by his judgment. Wherefore the complain-

ant prayed that the conveyance of the tract he made to the said Pierce may be decreed to be inoperative and void and that the said Pierce may be decreed to reconvey the premises to the complainant.

Service was made by publication, as the respondents were non-residents, and the respondents failing to appear and plead, answer, or demur to the bill of complainant, they were duly defaulted, and a decree was entered that the bill of complaint be taken as confessed.

Testimony was taken and the cause was submitted to the court and the court found that the conveyance was obtained by the said Pierce from the complainant through threats of personal violence made by the said Pierce and his agents, and without consideration, and a decree was entered ordering that the conveyance should be cancelled, and requiring the respondent to reconvey the premises to the complainant, as prayed in the bill of complaint.

Pursuant to a motion, however, subsequently filed by the appellee, it was ordered by the court that the decree as to him should be vacated, and that he have leave to appear and make defence. He accordingly filed an answer, in which he admitted that the complainant entered the land as alleged in the bill of complaint, and that he, the complainant, had been in the possession of the same from that time to the present, but alleged that the complainant occupied the same as tenant of the other respondent. Responsive to the charge made that the deed was procured from the complainant by threats, the appellee alleged that he had no knowledge upon the subject, that he could not answer to the charge as to his belief or otherwise, but upon information he denied the same and alleged the fact to be that the deed was the free and voluntary act of the complainant, and that the other respondent was the true and lawful owner in fee of the premises, divested of all the claims set forth in the bill of complaint; that he, the appellee, loaned to the other respondent the sum of five thousand dollars, and that the borrower failing to make payment as stipulated he brought suit against him and recovered judgment for the amount, of which two thou-

sand five hundred dollars remained due and unpaid, and that his judgment was a lien on the land described in the pleadings. Wherefore he insisted that his judgment ought in equity to be held a better claim on the land than the claim made by the complainant.

Defects exist in the record, arising from the loss of some portion of the minutes and files of the clerk, but it is conceded that the usual replication was filed, and the record shows that proofs having been taken by both parties the cause was heard and the District Court of the Territory entered a decree dismissing the bill of complaint and awarded costs to the respondent. From which decree the complainant appealed to the Supreme Court of the Territory.

Pending the appeal in the Supreme Court of the Territory, to wit, on the ninth of February, 1867, Nebraska was admitted into the Union upon an equal footing with the original States.*

Undetermined as the appeal was at that date, and it appearing in due form that the parties were citizens of different States, the cause was transferred to the Circuit Court of the United States for the District of Nebraska, and the parties having been again heard the Circuit Court determined that the deed made by the complainant to the other respondent was not made while he, the complainant, was in duress, and that the appellee, by reason of his judgment, has a better equity in the premises than the complainant, and entered a decree dismissing the bill of complaint. Whereupon the complainant appealed to this court, and now insists that the decree of the Circuit Court ought to be reversed.

Much examination of the evidence or of the law applicable in the decision of the case is unnecessary, as the facts are substantially the same as in a case between the same parties which was recently heard and determined by the court after mature deliberation.†

By the bill of complaint a complete title is set up by the

* 14 Stat. at Large, 392.        † Brown *v.* Pierce, 7 Wallace, 214.

complainant to the land under the pre-emption laws of the United States, and the answer admits that he held such a·title at the date of the deed he made to the other respondent. Argument upon that topic, therefore, is unnecessary, and the complainant charges that he was induced to execute the deed by threats and from fear of death or great bodily harm, and the respondent concedes that he is not able to deny that allegation from any personal knowledge upon the subject, and he even goes further and says that he cannot answer concerning the same, because he has no information or belief upon the subject. Such an answer does not make it necessary for the complainant to introduce more than one witness to overcome the defence, but the court is not inclined to place the decision upon any technical ground, as the proofs in the case show to the entire satisfaction of the court that all the matters alleged in the bill of complaint are true, and that the same are fully established, even if the allegations of the answer be regarded as denials made by a respondent in respect to matters within his own knowledge. Some conflict undoubtedly exists in the proofs, but the weight of the evidence is so decidedly with the complainant that the court feels no hesitation in saying that the allegations of the bill of complaint are fully proved.

Complete incipient title was acquired by the complainant under the pre-emption laws of the United States, and on the same day the defaulted respondent, through threats to take his life if he refused, compelled him to convey the same to that party, and the settled law of this court is that such acts amount to legal duress, and that a deed, or other written obligation or contract, procured by such means, is inoperative and void, and that rule is applied in all jurisdictions where the principles of the common law prevail.*

Actual violence is not necessary to constitute duress even at common law, as understood in the parent country, because consent is the very essence of a contract, and if there be compulsion there is no consent, and it is well-settled law

---

* Brown *v.* Pierce, 7 Wallace, 214.

that moral compulsion, such as that produced by threats to take life or to inflict great bodily harm, as well as that produced by imprisonment, is sufficient to destroy free agency, without which there can be no contract, as in that state of the case there is no consent.*

Where a party enters into a contract for fear of loss of life, or for fear of loss of limb, or fear of mayhem, or for fear of imprisonment, the contract is as clearly void as when it was procured by duress of imprisonment, which is where there is an arrest for an improper purpose without just cause, or where there is an arrest for a just cause but without lawful authority, or for a just cause but for an unlawful purpose, and the rule is that in either of those events the party arrested, if he was thereby induced to enter into a contract, may avoid it as one procured by duress.

2. Judgments were not liens at common law, but Congress, in adopting the modes of process prevailing in the States at the time the judicial system of the United States was organized, made judgments recovered in the Federal courts liens in all cases where they were so by the laws of the States, and a later act of Congress has provided that judgments shall cease to have that operation in the same manner and at the same periods in the respective Federal districts as like processes do when issued from the State courts.†

Such a lien confers a right to levy on the land to the exclusion of other adverse interests acquired subsequently to the judgment, but the lien constitutes no property or right in the land itself, as it is merely a general lien securing a preference over subsequently acquired interests in the property.‡

---

* Chitty on Contracts, 192; 2 Greenleaf on Evidence, 283; 2 Institutes, 482; 2 Rolle's Abridgement, 124; Richardson *v.* Duncan, 3 New Hampshire, 508; Watkins *v.* Baird, 6 Massachusetts, 511.

† Williams *v.* Benedict et al., 8 Howard, 111; Riggs *v.* Johnson Co., 6 Wallace, 166.

‡ Conard *v.* Atlantic Ins. Co., 1 Peters, 443; Massingill *v.* Downs, 7 Howard, 767; Buchan *v.* Sumner, 2 Barbour's Ch. 165; Ells *v.* Tousley, 1 Paige, 280; White *v.* Carpenter, 2 Id. 217.

For these reasons we are of opinion that the Circuit Court erred in entering a decree for the appellee.

DECREE REVERSED with costs, and the cause remanded with directions to enter a decree for the appellant,

IN CONFORMITY WITH THE OPINION OF THIS COURT.