ACCEPTED
06-15-00112-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/21/2015 9:32:01 AM
DEBBIE AUTREY
CLERK

No. 06-15-00112-CR

IN THE COURT OF APPEALS

FOR THE SIXTH APPELLATE DISTRICT

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
10/21/2015 9:32:01 AM
DEBBIE AUTREY
Clerk

JEROME ANDERSON,

APPELLANT

V.

THE STATE OF TEXAS,

APPELLEE

## APPELLANT'S BRIEF

On appeal from Cause No. 12-0427X

in the 71st District Court

Harrison County, Texas

Robert Lee Cole, Jr.
409 N. Fredonia Street, Suite 101
Longview, TX 75601
SBOT: 04547800
903-236-6288 Phone
903-236-5441 Fax
rcolejd@gmail.com
Attorney for Appellant

Oral Argument is Not Requested

## IDENTITY OF PARTIES AND COUNSEL

Jerome Anderson, Appellant
TDCJ #02001229
Joe F. Gurney Unit
1385 FM 3328
Palestine, TX 75803

Robert L. Cole, Jr.
Appellant's Counsel on Appeal
409 N. Fredonia Street, Suite 101
Longview, TX 75601

Tommy Jackson at Trial
Shawn Connally on Appeal
Prosecutor
Harrison County District Attorney's Office
P.O. Box 776
Marshall, TX 75671

Honorable Brad Morin
Presiding Trial Judge
71st District Court
200 W. Houston Street, Suite 219
Marshall, TX 75670

# TABLE OF CONTENTS

Identity of Parties and Counsel                                          ii

Table of Contents                                                       iii

Index of Authorities                                                     iv

Statement of the Case                                                     1

Statement Regarding Oral Argument                                         1

Issues Presented                                                          2

Issue No.1- The trial court erred by admitting into evidence the custodial interview of the defendant despite the defendant not waiving his right not to make any statement that might incriminate him.

Issue No. 2- The trial court erred by denying appellant's motion for continuance to locate a witness in that the prosecutor failed to update the contact information in the state's witness list.

Issue No. 3- The State failed to provide exculpatory or mitigating evidence in violation of the Confrontation Clause of the Sixth Amendment of the Constitution of the United States.

Statement of Facts                                                      2-7

Summary of the Argument                                                   8

Argument                                                               8-19

Prayer                                                                   19

Certificate of Compliance                                                20

Certificate of Service                                                   21

Appendix –Information-Cause No. 2:14-CR-5, U.S. v. West                  22

# INDEX OF AUTHORITIES

CASES                                                                          PAGE

*Brady v. Maryland,* 373 U.S. 83 (1963)                                         16, 18-19

*Colorado v. Connelly,* 479 U.S. 157 (1986)                                     11

*Cooks v. State,* 844 S.W.2d 697 (Tex. Crim. App. 1992)                         13

*Ex Parte Mitchell,* 853 S.W.2d 1 (Tex. Crim. App. 1993)                        16

*Heiselbetz v. State,* 906 S.W.2d 500 (Tex. Crim. App. 1995)                    13

*Hill v. State,* 429 S.W. 2d 481 (Tex. Crim. App. 1968)                         11

*Janecka v. State,* 937 S.W.2d 456 (Tex. Crim. App. 1996)                       13

*Joseph v. State,* 309 S.W.3d 20 (Tex. Crim. App. 2010)                         11

*Kyles v. Whitley,* 514 U.S. 419 (1995)                                         14, 16-19

*Miranda v. Arizona,* 384 U.S. 436 (1966)                                       9, 11

*Rosales v. State,* 841 S.W.2d 368 (Tex. Crim. App. 1992)                       13, 14

*Thomas v. State,* 841 S.W.2d 399 (Tex. Crim. App. 1992)                        16

*United States v. Agurs,* 487 U.S. 97 (1976)                                    16

*United States v, Bagley,* 473 U.S. 667  (1985)                                 17, 18


CONSTITUTIONAL PROVISIONS, CODES, RULES

U.S. Const. amend. V                                                            8, 9
U.S. Const. amend. VI                                                           2, 8-9
Tex. Code Crim.Pro. art. 29.03                                                  13
Tex. Code Crim.Pro. art. 29.06(a)                                              13
Tex. Code Crim.Pro. art. 38.22                                                  8-9, 12
Tex. Health and Safety Code §481.112(f)                                         1
Tex. Health and Safety Code § 481.113(d)                                        1
Tex.R.App.Pro. 9.4                                                              20
Tex.R.App.Pro. 43.2                                                             19

iv

## STATEMENT OF THE CASE

Appellant was charged by indictment November 29, 2012 for the offense of possession with intent to deliver a controlled substance namely cocaine in an amount of 400 grams or more (Texas Health and Safety Code § 481.1129(f)) in Count I and possession with intent to deliver four or more grams but less than 400 grams of methyllenedioxymethamphatine in Count II (Texas Health and Safety Code § 481.113(d)). (CR p.7.). Both offenses were alleged to have occurred on or about September 23, 2011. (CR p. 7). Appellant waived arraignment and entered pleas of not guilty January 22, 2013. (CR p. 39). Appellant elected to waive his rights to a jury trial June 17, 2014. (CR p. 70). A bench trial was held April 28, 2015 where evidence was heard and also May 7, 2015 at which time Appellant was sentenced to 15 years confinement. (RR Vol.2 pp. 14-226, RR Vol. 3, pp. 4-15). Motion for New Trial and Motion in Arrest of Judgment was filed May 20, 2015 and heard before the trial court July13, 2015. (CR pp. 151-154, RR Vol. 5, pp. 4-10). The Recorder's Record was filed August 25, 2015. Appellant's brief is due and timely filed on or before October 26, 2014.

## STATEMENT REGARDING ORAL ARGUMENT

Oral Argument is Not Requested

1

## ISSUES PRESENTED

Issue No.1- The trial court erred by admitting into evidence the custodial interview of the defendant despite the defendant not waiving his right not to make any statement that might incriminate him.

Issue No. 2- The trial court erred by denying appellant's motion for continuance to locate a witness in that the prosecutor failed to update the contact information in the state's witness list and provide exculpatory evidence prior to trial.

Issue No. 3- The trial court erred by not requiring the state to identify a confidential informant in violation of the Confrontation Clause of the Sixth Amendment of the United States Constitution. U.S. Const. amend VI.

## STATEMENT OF FACTS

On September 23, 2011 officers with the Marshall Police Department searched a residence in Marshall, Texas based upon information contained in an Affidavit for Search Warrant that was presented to a magistrate September 22, 2011 in Harrison County, Texas. (RR Vol. 5, Ex. 1). The affidavit for search warrant relied upon assertions of a confidential informant, or CI, who purported to be at the residence in question within 72 hours prior to the preparation of the Affidavit for Search Warrant and claimed to have seen Appellant at the location

2

and observed Appellant to be in possession of cocaine and marijuana. (RR Vol.5, Ex. 1).

Appellee, the State of Texas, provided a witness list that included the name of William "Brody" West, an officer with the Marshall Police Department, and provided his address at the office location of the Marshall Police Department. (CR pp. 65-66) (RR Vol.2, pp. 14-28). Appellant filed a Motion for Continuance that notified the trial court and the state, among other matters, that Appellant did not have the identity of the confidential informant in order to properly confront Appellant's accusers, and that Appellant also did not have the address of William "Brody" West, also for the reason of confronting and examining his accusers and pursuant to Tex. Code Crim. Pro. Art. 39.14. (CR pp. 108-110). The State was aware that William "Brody" West was a subject of criminal investigation and prosecution and conceded as much during their presentation in opposition to Appellant's Motion for Continuance (RR Vol. 2, p. 27). The trial court denied Appellant's Motion for Continuance, and proceeded with trial. (RR Vol. 2, p.28).

Lieutenant Lynn Ames testified that he was a patrolman assigned to the narcotics division and participated in the execution of a search warrant at Appellant's (Anderson's) house. (RR Vol.2, pp. 31-33). Ames testified that a search of the residence turned up firearms and narcotics. (RR Vol.2, p.35). Through Ames, the State introduced the return on the search warrant and

photographs taken at the time of the search. (RR Vol.2 p. 37; RR Vol. 5, Exhibits). Ames also testified as to the locations of the objects identified in the photographs and that drugs, guns, razor blades and currency was found in the searched residence (RR Vol. 2 pp. 33-88). Ames also testified he was of the opinion that Anderson possessed the narcotics with the intent to distribute (RR Vol. 2, pp. 87-88).

Ames also testified how confidential informants were commonly used, and that some would receive money while others would try to help themselves on pending criminal cases. (RR Vol. 2, pp. 91-92). Ames also testified that William "Brody" West was a narcotics officer at the time of the search and that West participated in this investigation (RR Vol. 2, p. 92). Ames also testified that West used confidential informants, that West resigned from the police department because West was under investigation, that he was working with an informant, and that something was being done incorrectly (RR Vol. 2, pp. 92- 93). Ames testified that West had contact with the confidential informant in this case on more than a few occasions. (RR Vol. 2, pp. 95-96). Ames also testified that he did not know who was investigating West, but that he thought it was a federal investigation, and that he assumed that the district attorney's office had been informed of the investigation. (RR Vol. 2, pp. 93-94). Evidence collected by West was relied upon by Ames in the course of the investigation of Anderson. (RR Vol 2, p. 100).

4

There was another individual in the house at the time of the search and in the same proximity to all the seized evidence that the police did not arrest. (RR 2, Vol. 2, p. 96). Appellant again asked for and was refused the name of the confidential informant in this case. (RR Vol. 2, pp. 99-100).

Sarah Hodges was the crime scene officer and she took photographs of various items collected at the scene in addition to the scene of the search itself; she also testified as to taking collected substances to the crime lab for forensic analysis. (RR Vol. 2, pp. 105-130). Hodges further stated that there were two people at the home when the search began, that these individuals were removed from the home during the search, and that no fingerprints were taken from the bags of contraband seized. (RR Vol. 2, pp. 130, 141-142). She also admitted that there was no way to say that appellant had ever touched the bags containing any of the contraband and that no DNA samples were taken. (RR Vol. 2, pp. 130, 142-143).

Hodges also testified that William "Brody" West prepared some of the incident report, that he participated in the search of the house, and that he no longer worked for the Marshall Police Department. (RR Vol. 2, pp. 143-144).

Claybion Cloud III is a forensic chemist who has been employed at the Department of Public Safety Crime Laboratory in Tyler, Texas for the past sixteen years. Mr. Cloud testified as to his qualifications, the accreditation of the DPS lab, and the process by which items are tested. (RR Vol. 2, pp. 145-149). Mr. Cloud

identified those items that were taken to the lab in this case, described the tests he performed, and the results of the testing (RR Vol.2, pp. 150-154, 157-159). He also testified that the drug tested was cocaine and to the weight of each sample of drug that he tested (RR Vol. 2, pp. 160-162). Mr. Cloud also testified that he saw no evidence that the bags containing the drugs he tested had ever been fingerprinted. (RR Vol. 2, p. 166). The State stipulated on the record that no fingerprints were taken of any of the firearms seized. (RR Vol. 2, p. 167).

Joe Bounds is an investigator with the Harrison County District Attorney's Office who was previously employed as a narcotics investigator with the Harrison County Sheriff's Office. (RR Vol. 2, p. 168). On September 23, 2011 Bounds, along with William "Brody" West, conducted a custodial interview with the Appellant that was recorded., and in which the defendant was told of his rights, but not asked whether he waived his rights (RR Vol, 2, pp. 168-174). Bounds also admitted that William "Brody" West is the one who advised appellant of his rights and questioned him. (RR Vol.2, pp. 174-175). Bounds further testified that West was no longer employed with the Marshall Police Department, that he was told that the investigation of West was being conducted by the FBI (see Appendix), and that the investigation was widely known by members of the Harrison County District Attorney's Office. (RR Vol. 1, pp. 174-176)(see Appendix). He further stated that West previously dealt with confidential informants, that he could not rule out that

West had any contact with the informant in this case, and that he could not rule out that the FBI investigation of West did not predate September 23, 2011. (RR Vol. 2, pp. 174-178).

Arllie Anderson is Jerome Anderson's mother, and she is the owner of the house that was searched in this case. (RR Vol.2, pp. 187, 190). She also testified that Appellant lived in the house on September 23, 2011 and that she came by there some. (RR Vol. 2, p. 191). She also said that Jerome had been previously shot, and that there was nothing illegal about owning firearms or surveillance equipment especially after they had been shot. (RR Vol 2, pp. 202-205).

## SUMMARY OF THE ARGUMENT

In his first issue, Appellant complains that the court admitted into evidence the recordings of his custodial interview which are memorialized in State's Exhibits 16 and 17. This interview was conducted in violation of Tex. Code Crim. Pro. Art. 38.22 and the rights not to incriminate oneself and the right to counsel protected by the Fifth and Sixth Amendments to the Constitution of the United States.

In his second point of error, Appellant asserts that the trial court erred by denying appellant's motion for continuance in that information regarding the location of a witness was incorrect and who was an investigating officer who is under investigation for malfeasance.

In his third point of error, Appellant argues that the state failed to provide evidence which was mitigating or exculpatory in violation of his due process rights provided by the Constitution of the United States.

## ARGUMENT

ISSUE NO. 1- The trial court erred by admitting into evidence the recordings of his custodial interview which are memorialized in State's Exhibits 16 and 17. This interview was conducted in violation of Tex. Code Crim. Pro. Art.

38.22 and the rights not to incriminate oneself and the right to counsel protected by the Fifth and Sixth Amendments to the Constitution of the United States.

After being placed into custody and taken to law enforcement offices, former police officer William "Brody" West read Jerome Anderson his statutory warnings pursuant to Art. 38.22. Investigator Joe Bounds of the Harrison County District Attorney's Office was also present and assisted during the custodial interview. The defendant did not clearly or affirmatively assert his understanding of those rights, and he did not waive those rights. The defense disagrees with the State's assertions as to the responses by Appellant. Neither of the peace officers present asked the defendant if he waived his rights. Evidence before the trial court from three defense witnesses, and investigating officer Lieutenant Len Ames is that the defendant in this case has never been convicted of a felony in the State of Texas, nor any other state. (RR. Vol. 2, pp.103, 182, 187, 212). The defense timely objected to the admissibility of the statement at trial 28 April 2015. (RR Vol. 2, pp. 171-173).

The requirement requiring police officers to read and secure waivers of the United States Constitution right against self-incrimination was first recognized by the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436 (1966). Those Constitutional rights have been codified and enhanced by the Texas Legislature and exist now in the Texas Code of Criminal Procedure Art. 38.22.

9

Art. 38.22 (3)(a) state in part that " no oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless: prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning."

The Court of Criminal Appeals has stated,

"Article 38.22 of the Code of Criminal Procedure establishes procedural safeguards for securing the privilege against self-incrimination. CODE CRIM. PROC. ANN. art. 38.22. Among its requirements, it provides that no oral statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless (1) the statement was recorded and (2) prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. CODE CRIM. PROC. ANN. art. 38.22, § 3. The warning must inform a defendant of the following rights:

(1) He has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time.

Tex. Code Crim. Pro. art. 38.22, § 2. The statute contains two distinct elements pertaining to a statement's admissibility: the defendant's receipt of the

10

prescribed warning and his waiver of the rights set out in the warning." *Joseph v. State*, 309 S.W.3d 20(Tex. Crim. App.- 2010).

The *Joseph* Court also stated:

"The State has the burden of showing that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See Miranda*, 384 U.S. at 444, 475, 86 S.Ct. 1602; *Hill v. State*, 429 S.W.2d 481, 486 (Tex.Crim.App.1968). The State must prove waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)."

In addition, *Joseph* also pointed out that the waiver need not be explicit, but that the waiver must be knowingly, intelligently and voluntarily waived using a totality of the circumstances standard.

The concurrence in *Joseph*, stated:

"Merely asking the accused whether he understood his rights does not satisfy the duties of an interrogating officer or make any statement the accused might then make admissible. *Miranda* requires the interrogating officer to go further and make sure that the accused, knowing his rights, voluntarily relinquishes them.[6]

However, "an express statement is not invariably necessary to support a finding that the defendant waived either the right to remain silent or the right to counsel."[7] Under some circumstances, if a suspect has been fully warned of his rights and has indicated that he understands those rights, a course of conduct consistent with waiver "may" support the conclusion that the suspect has waived his *Miranda* rights.[8] However, the courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but at least in some cases waiver can be clearly inferred from the actions and words of the person interrogated.[9]

That is, the deck is stacked against the finding of an implicit waiver, but the State may, at least in some cases, show that a waiver can be clearly inferred from the suspect's words and actions after having been warned."

11

It is quite clear that the preferred method of obtaining an express waiver is through an express waiver of Art. 38.22 rights.

The State of Texas failed to prove that the defendant waived his Art. 38.22 rights in any way. The evidence shows that the defendant was not experienced in any way with the criminal justice system and its nuances. Further, there is insufficient proof that the defendant even understood his rights. The comments of the defendant, as recorded, provides clear evidence that he did not waive his Art. 38.22 rights. He hemmed and hawed all through the advisement of rights. Further, he was not ever asked whether he wanted to waive his rights. Therefore, no explicit waiver occurred.

Having not waived his rights, either explicitly nor impliedly, the statement of the defendant cannot be entered into evidence, and should not have been considered by the trial court.

Issue No. 2- The trial court erred by denying appellant's motion for continuance to locate a witness in that the prosecutor failed to update the contact information in the state's witness list and provide exculpatory evidence prior to trial. Appellant sought a continuance in order to locate and serve a subpoena on

William "Brody" West after learning that he could not be found at the address provided by the prosecution and relied upon by the defense.

Tex. Code Crim. Pro. Article 29.03 provides that a criminal action may be continued on motion by either party, upon sufficient cause shown in the motion. Tex. Code Crim. Pro., Article 29.06(6) states that the sufficiency of the motion shall be addressed to the sound discretion of the trial court, and shall not be granted as a matter of right. The trial court's ruling on a motion for continuance is reviewed under an abuse of discretion standard. *Janecka v. State,* 937 S.W.2d 456, 468 (Tex.Crim.App. 1996), cert. denied, 118 S.Ct. 86,139 L.Ed.2d 43 (1997); *Heiselbetz v. State,* 906 S.W.2d 500 (Tex.Crim.App. 1995); *Cooks v. State*, 844 S.W.2d 697, 725 (Tex.Crim.App. 1992), cert. denied, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993). To establish an abuse of discretion the defendant must show that he was actually prejudiced by the denial of his motion. *Heiselbetz*, 906 S.W.2d at 511. "Where denial of a continuance has resulted in demonstrated prejudice, we have not hesitated to declare an abuse of discretion. *Rosales v. State*, 841 S.W.2d 368, 372 (Tex. Crim. App. 1992), cert. denied, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993)." *Janecka*, supra. With respect to the prompt and efficient administration of justice versus the rights of the defendant to a fair trial: [T]he United State's Supreme Court has observed that the question of whether or not to grant a continuance: "is traditionally within the discretion of the

13

trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly the reasons presented to the trial judge at the time the request is denied. [citations omitted]." *Rosales*, supra at 374, quoting *Ungar v. Sarafite*, 376 U.S. 575, at 589, 84 S.Ct. 841, at 849- 850, 11 L.Ed.2d 921, at 931 (1964) (emphasis added). The State is required to disclose exculpatory evidence regardless of whether counsel requests it. Kyles, supra. Had this information been available prior to trial, counsel would have been able to better investigate these suspects, develop evidence and present it as part of his defense. Had he been able to do so, he would have been better prepared to present evidence that William "Brody" West was under FBI investigation, that William "Brody" West had contact with the confidential informant, the relationship with West had with the informant and other party at the scene, and the reason for release of the other individual located at the residence that was searched. Moreover, in excess of three years had elapsed from the time of the offense until the case went to trial. Appellant knew practically nothing of William "Brody"

14

West's background. If he had known of West's federal charges to trial, he may have been able to confront West regarding whether his malfeasance may also have affected Appellant's case. For this reason, the trial court erred in refusing to grant him a continuance.

Issue No. 3- In his fourth point of error, Appellant argues that the state failed to provide evidence which was mitigating or exculpatory in violation of his due process rights provided by the Constitution of the United States.

In this case the State filed a witness list containing the name of William "Brody" West and listing his address as "Marshall Police Department, Marshall, Texas" and provided the non-emergency number of the Marshall Police Department. (CR, p. 65). The elected district attorney, when referring to the legal status of West stated that he knew that Mr. West was being prosecuted in the federal system, and attempted to cast that knowledge upon the defense (RR. Vol. 2, pp. 27-28). Lieutenant Len Ames testified that William "Brody" West was involved in the investigation, that West worked as a narcotics investigator, that West was working with the informant in this case, that he believed that it was a federal investigation, and that West had contact with this informant on more than a few occasions. (RR Vol. 2, pp. 92-96). Appellant requested the identity of the informant and that information was denied. ( RR Vol 2. Pp.99-100).

15

Joe Bounds, now an investigator with the Harrison County District Attorney's Office, testified that he understood that West was under investigation (RR Vol. 2, p.175). Bounds also stated he knew of the investigation during the entirety of his employment at the district attorney's office, and that it was widely known in that office that West was under investigation. (RR Vol.2, pp. 174-176). Bounds also could not rule out that the FBI investigation did not predate the offense alleged in this case. (RR Vol. 2, pp. 177).

A prosecutor has an affirmative duty to disclose, prior to trial, all evidence favorable to the accused. See *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 215 (1963). If the withheld evidence is favorable to the accused and is material, the defendant is entitled to a new trial. Id. The Court of Criminal Appeals, consistent with Supreme Court precedent, has held a three-part test applies to a claim that undisclosed evidence violates a defendant's right to due process. Such a violation occurs when a prosecutor: 1) fails to disclose evidence; 2) which is favorable to the accused; 3) that creates a probability sufficient to undermine confidence in the outcome of the proceeding. *Ex Parte Mitchell,* 853 S.W.2d 1, 4 (Tex.Crim.App. 1993); *Thomas v. State*, 841 S.W.2d 399, 404 (Tex.Crim.App. 1992).

Impeachment evidence is favorable evidence. *Mitchell*, supra at 4; Thomas,

16

supra at 404. The Supreme Court has held "that regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley,* 514 U.S. at 433-434, 115 S.Ct. at 1565, quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (opinion of Blackmun, J.); id. at 685, 105 S.Ct. at 3385 (White, J., concurring in part and concurring in judgment) 87 L.Ed.2d 481 (1985).

In *Kyles,* the Supreme Court discussed and emphasized four aspects of materiality under *Bagley.* First, a showing of materiality does not require the defendant to demonstrate that disclosure of the suppressed evidence would have resulted ultimately in his acquittal, whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant. *Kyles,* 514 U.S. at 434-435 , S.Ct. at 1565-66. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the Government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" Id., S.Ct. at 1566, quoting *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381.

17

Secondly, *Bagley* materiality is not a sufficiency of the evidence test. "One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, U.S. at 435, S.Ct. at 1566.

Thirdly, once the reviewing court applying *Bagley* has found constitutional error there is no need for further harmless-error review. "Assuming arguendo that a harmless error enquiry were to apply, a Bagley error could not be treated as harmless, since 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different,' . . .necessarily entails the conclusion that the suppression must have had 'substantial and injurious effect or influence in determining the jury's verdict,'" *Kyles*, U.S. at 435, S.Ct. at 1566 (internal citations omitted).

Finally, the Court stressed as the fourth aspect of *Bagley* materiality that its definition in terms of suppressed evidence is considered collectively, not item-by-item, viz: While the definition of Bagley materiality in terms of the cumulative effect of suppression must accordingly be seen as leaving the government with a degree of discretion, it must also be understood as imposing a corresponding burden. On the one side, showing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a *Brady* violation, without

18

more. But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, see *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196-1197), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable. *Kyles,* U.S. at 437-438, S.Ct. at 1567.

By failing to provide Appellant with information regarding the address of William "Brody" West, the nature of the federal investigation into the conduct of William "Brody" West, the relationship that West may have had with the confidential informant in this case, it is clear that the State failed in its duty to provide such evidence to Appellant. Such failure resulted in the denial of a fair trial.

## PRAYER

Wherefore, premises considered, Appellant prays that this Honorable Court of Appeals, pursuant to Texas R. App. Pro. 43.2, reverse the finding of guilty by the trial court and render a judgment of acquittal.

Respectfully Submitted,

ROBERT L. COLE, JR.
Attorney for Appellant
SBOT; 04547800
409 N. Fredonia, Suite 101
Longview, TX 75601
903-236-6288 Phone
903-236-5441 Fax
rcolejd@gmail.com  e-mail

## CERTIFICATE OF COMPLIANCE

I hereby certify that this computer generated document contains 4,253 words

as limited by Texas Rule of Appellate Procedure Rule 9.4.

ROBERT L. COLE, JR.
Counsel for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on this the 21st day of October 2015, a copy of the foregoing has been delivered via fax transmission to Harrison County District Attorney's Office, 903-938-3912, with attention to Shawn Connally, Attorney for Appellee.

_____
ROBERT L. COLE, JR.
Counsel for Appellant

# APPENDIX

Information United States District Court, Eastern District of Texas, Marshall Division

Cause No. 2:14-CR-5

United States of America v. William West

(3 pages follow)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 2:14-CR-5 |
| | § | JUDGE: Gilstrap/Payne |
| WILLIAM WEST | § | |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### Count One

Violation: 18 U.S.C. § 4
(Misprision of a Felony)

On or about March, 2012 in Harrison County, Texas, in the Eastern District of Texas, the Defendant, **William West (West)**, having knowledge of the actual commission of a felony cognizable by a court of the United States, to wit: Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1), did conceal said felony by sending a text message to an individual who was then and there in possession of cocaine with the intent to distribute, to "shut it down" when **West** knew that law enforcement officers were actively engaged in an effort to collect evidence against said individual, in order to facilitate the commission of said felony, and did not as soon as possible make known the same to some judge or other person in civil authority under the United States, in violation of 18 U.S.C. § 4.

**Information - Page 1 of 3**

JOHN M. BALES
UNITED STATES ATTORNEY

_____          Date 8/5/2014
Jim Noble
Assistant United States Attorney

**Information - Page 2 of 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § | NO. 2:14-CR-5 |
| | § § | |
| WILLIAM WEST | § | |

## NOTICE OF PENALTY

### Count One

Violation:          18 U.S.C. § 4 (Misprision of a Felony)

Penalty:            A fine of not more than $250,000.00; imprisonment for not
more than three (3) years; or both.   A term of supervised
release of not more than one (1) year.

Special Assessment:   $100.00

**Information - Page 3 of 3**